IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 31, 2000

## CECELIA G. HUTCHESON v. ANDREW W. HUTCHESON

**Appeal from the Circuit Court for Sumner County**
**No. 19146-C    William Dender and Arthur E. McClellan, Judges**

---

### No. M2000-00894-COA-R3-CV - Filed October 8, 2002

---

Before these parties were married, Husband earned $60,000.00 per year as an independent insurance agent. Wife earned $50,000.00 yearly as a registered nurse. After their marriage in 1986, Husband never earned more than $10,000.00 yearly. Wife became disabled in 1997 and thereafter received social security benefits. She was awarded alimony of $150.00 weekly upon a finding that Husband was reasonably capable of earning an income from which he could pay this amount. He disagrees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., WILLIAM B. CAIN, J., WILLIAM C. KOCH, JR., J.

Andrew W. Hutcheson, appellant, Demorest, Georgia, Pro Se.

Phillip Mark Walker, Goodlettsville, Tennessee, for appellee, Cecelia G. Hutcheson.

**OPINION**
**PER CURIUM**

**I.**

This divorce complaint was filed January 29, 1999. The plaintiff, hereafter Wife, alleged that her husband was guilty of inappropriate conduct entitling her to a divorce, division of assets, and alimony. The parties were married in 1986, each for the third time, and no children were born to them. Each was forty-eight years old at the time of trial.

The record does not reveal that Husband answered the complaint, or that a judgment by default was taken and entered. The case was heard on November 17, 1999, and the judgment recites that it was heard upon the complaint filed by Wife, and the complaint filed by Husband in Davidson County and "transferred to this court." The complaint filed by Husband is not included in the record.

Nonetheless, we are able to glean and deduce from the testimony of the parties, the exhibits, and the briefs, the respective objectives of each party.

The trial judge[1] found that each party had been guilty of inappropriate marital conduct, and each was awarded a divorce from the other. He found that the "husband has either lied about his income or is grossly underemployed," and that he had the ability to earn greater income [than $10,000.00 yearly]. Husband was ordered to pay Wife $150.00 weekly alimony *in futuro* beginning November 17, 1999 until "death or remarriage," with leave granted to Husband to seek a modification of the alimony should Wife's health allow her to return to work. Wife was awarded $6,000.00 in alimony *in solido*, and each party was awarded his/her separate property. Wife was awarded her retirement account, a Blazer automobile and her former name was restored. Husband was awarded a 1998 Camaro automobile. The marital debts were divided.

## II.

Husband appeals pro se, and presents for appellate review a host of issues which may be condensed as follows:

1.     Whether venue was properly in Sumner County.
2.     Whether alimony *in futuro* was properly awarded.
3.     Whether the marital property was equitably divided.

Review is *de novo* on the record accompanied by the presumption that the judgment is correct unless the evidence preponderates against the judgment. Rule 13(d) Tenn. R. App. P.

Husband filed a motion for a new trial on December 30, 1999, complaining of the award of alimony. He alleged that he had "learned that wife qualifies for a pension through her former employer"; that since the trial "he has learned that her 401K had in excess of $8,000.00 in it at the time of the parties separation"; that Wife misrepresented her health status. Husband filed his affidavit in support of his motion.

Wife filed her counter affidavit, deposing that her 401K was "dissipated long before the divorce was filed" and that she is unable to work.

The motion for a new trial was denied.

In September 2000, Husband filed a motion to consider post-judgment facts evidenced by affidavits tending to demonstrate that his former wife's physical health was not as deteriorated as she reported to the court, and alleging that she had perjured herself upon the trial eight months earlier. Husband has also moved this court to consider as a post-judgment fact a video tape made

---

[1] Three trial judges were involved in this case. Judge Goodall initially presided. After his death, Judge Dender heard the entire case. Judge McClellan heard the appellant's motion for a new trial.

four days after the trial. We have heretofore ruled that the matters alleged in these motions are not appropriate for our consideration pursuant to Rule 14, Tenn. R. App. P., ***Duncan v. Duncan***, 672 S.W.2d 765 (Tenn. 1984), and we reaffirm this ruling.

## III.

These parties were married September 5, 1986. At the time of trial, Wife and Husband were forty-eight years of age. No children were born to them. At the time of the marriage, Wife worked as a nurse at Nashville Memorial Hospital, and Husband was an independent insurance agent. Immediately before the marriage, Husband moved his business from Lawrenceburg, Tennessee to Nashville, which resulted in the loss of most of his clients. Husband believed that he would be able to attract clients in Nashville, but his business was essentially unsuccessful. Wife believed Husband's lack of success was due to his casual approach to working, while Husband blamed his failure on industry changes. Throughout the marriage Husband earned about $10,000.00 a year, compared to $60,000.00 before the marriage. Wife earned about $50,000.00 a year before she became disabled.

During the marriage Wife began to suffer from migraine headaches. In June of 1997, she took a medical leave of absence from Memorial Hospital. Her condition did not improve, and in October of 1998, she went to the Michigan Head Pain and Neurological Institute for three weeks, but thereafter continued to have daily migraines, and was advised to remain off from work. Nevertheless, Husband pressured her to return to her job.

While working as a nurse at Memorial Hospital in Nashville, Wife purchased a disability insurance policy. Because of her severe migraine headaches, she became unable to work and in July of 1998 received $52,000.00 in settlement from this policy. The parties invested $45,000.00 of this settlement in money market accounts and spent the remaining on certain items, including a computer for Husband. Throughout the Fall of 1998, the parties substantially depleted the money market account, and sold their marital residence in Davidson County, moving to an apartment located in Sumner County. In December 1998, Husband moved out of the apartment and withdrew the remaining settlement money out of the money market accounts without Wife's knowledge. At the same time, he took the parties' ski and fishing boat allegedly worth $14,000.00 and sold it to his sister for $3,500.00.

When Husband moved out of the marital residence, Wife had only $500.00 in the checking account, and vacated the apartment that she and her husband had previously used as the marital residence, moving in with her mother, where she continued to reside. Thereafter, Wife was awarded monthly social security benefits in the amount of $1,256.00, her sole income.

At the final hearing, the parities agreed upon a division of the marital household property, with the exception of the riding lawn mower. They also agreed on how they would apportion the debts with the exception of the balance owed on the riding lawn mower. Two vehicles, a 1998

Camaro and a 1988 Ford Bronco, are part of the marital property. The Bronco is registered in Wife's name and the Camaro is registered and financed in Husband's name.

## IV.

The proper venue for a divorce case is the county in which the parties reside at the time of separation. Tenn. Code Ann. § 36-4-105. At the time of their separation on December 4, 1998, the parties were living in Sumner County which was the proper venue.

In any event Husband made a general appearance in Sumner County without raising an objection to the venue, and he waived the right to raise this issue on appeal. ***Kane v. Kane***, 547 S.W.2d 559 (Tenn. 1977).

## V.

The trial court awarded Wife $150.00 weekly as alimony *in futuro*. Husband argues that the evidence neither justifies nor supports this award.

It has long been settled that the trial court has broad discretion in determining the amount and duration of alimony. Tenn. Code Ann. § 36-5-101; ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn. 1995); ***Brown v. Brown,*** 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994).

In determining whether or not an award of alimony is appropriate and in determining the nature, amount, length of term and manner of payment the court must consider all relevant factors including those set forth in Tenn. Code Ann. § 36-5-101(d)(1):

(A)   The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B)   The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C)   The duration of marriage;

(D)   The age and mental condition of each party;

(E)   The physical condition of each party, including but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F)   The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G)   The separate assets of each party, both real and personal, tangible and intangible;

-4-

(H)  The provisions made with regard to the marital property as defined in Tenn. Code Ann. § 36-4-121;

(I)  The standard of living of the parties established during the marriage;

(J)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K)  The relative fault of the parties in cases where the court, in its discretion, deems it appropriate;

(L)  Such other factors, including tax consequences to each party, as are necessary to consider the equities between the parties.

In this jurisdiction, it has long been accepted that the most important factors to be considered in awarding alimony are need and the ability to pay. ***Ford v. Ford,*** 952 S.W.2d 824 (Tenn. Ct. App. 1996). According to Wife's testimony, she is unable to live independently on social security benefits of $1,256.00 per month, and she is unable to work. While Husband claims that he does not have the ability to pay, the evidence clearly supports the trial court's ruling that he has the ability to find better employment. During the last several years, he earned approximately $10,000.00 a year "tinkering" in the insurance business; before his marriage in 1986, he earned $60,000.00 yearly.

Tennessee Code Annotated § 36-5-101(d)(1) reflects that the legislature prefers rehabilitative alimony to be awarded, alimony *in futuro* may be awarded in cases where the award of rehabilitative alimony is not feasible. ***Long v. Long***, 968 S.W.2d 292 (Tenn. Ct. App. 1997). We agree that in the case at Bar, rehabilitative alimony is not feasible because Wife has a physical disability that prevents her from presently working. We are unable to find that the evidence preponderates against the award of alimony.

## VI.

Husband insists that the division of marital assets was inequitable.

The legislature has provided that the courts shall equitably divide the marital property of the parties. Tenn. Code Ann. § 36-4-121(a). In deciding what is equitable, the courts must consider all relevant factors including:

(1)  The duration of the marriage;

(2)  The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of the parties;

(3)  The tangible or intangible contributions by one (1) party to the education, training or increased earning power of the other party;

(4)  The relative earning ability of each party to the acquisitions of capital assets and income;

(5)   The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of each party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as a homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6)   The value of the separate property of each party;

(7)   The estate of each party at the time of the marriage;

(8)   The economic circumstances of each party at the time the division of property is to become effective;

(9)   The tax consequences to each party;

(10)  Such other factors as are necessary to consider the equities between the parties.

Trial courts have broad discretion in deciding how the marital estate should be divided. ***Fisher v. Fisher***, 648 S.W.2d 244, 246 (Tenn. 1983); ***Harrington v. Harrington***, 798 S.W.2d 244, 245 (Tenn. App. Ct. 1990); ***Pennington v. Pennington***, 592 S.W.2d 576 (Tenn. Ct. App. 1979). The trial court's distribution is to be given great weight on appeal and will be presumed to be correct unless the preponderance of the evidence is found to be otherwise. ***Barnhill v. Barnhill***, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991).

The evidence respecting marital property and the value of each asset is meager. A boat, motor and trailer were awarded to Wife, who placed a value thereon of $14,000.00. The appellant testified this asset was worth $3,500.00, and the court agreed. A Bronco vehicle of the agreed value of $5,000.00 was awarded to Wife; a 1998 Camaro, no value shown, was awarded to Husband; a lawn mower, no value shown, was awarded to Wife, as was her retirement account, no value shown. The marital property listed in Wife's proposed division of the value of $15,115.00 was awarded to her: Husband's share was $9,000.00. As found by the trial court, the value of the marital estate was $33,005.00; the marital debts were $15,830.23, with a net value of $17,174.77.

The statute provides that the court is to take into account "the contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of each party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as a homemaker or wage earner to be given the same weight if each party has fulfilled his or her role." Tenn. Code Ann. § 36-4-121(e)(5). The evidence is clear that throughout the marriage Wife performed the dual roles of the main wage earner and homemaker. While Wife consistently worked as a nurse earning about $50,000.00 a year, Husband casually ran his independent insurance sales business, resulting in yearly earnings of about $10,000.00. While the difference in income does not *per se*, make the trial court's division of property equitable under the contribution provision, the effort each party made to contributing to the marriage must also be taken into account.

Following their separation, Husband sold the couple's boat, motor and trailer to his sister for $3,500.00 without conferring with Wife about the sale. Wife testified that they had

previously advertised the boat for $14,000.00 and in her estimation the boat was worth a minimum of $14,000.00. In ordering Husband to pay Wife the full amount he received for the boat, the trial court took into account the fact that Husband took the boat and sold it for less than it was worth without conferring with Wife.

We are unable to find that the distribution of the marital estate is contrary to the weight of the evidence.

The judgment is affirmed at the costs of the appellant Husband and the case is remanded for all appropriate purposes.

**PER CURIUM**