# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 6, 2007 Session

## TIMOTHY WADE KEYT v. NANCI SUZANNE KEYT

**Appeal by permission from the Court  of Appeals, Middle Section**
**No. 02-174     Vernon Neal, Chancellor**

---

**No. M2005-00447-SC-R11-CV - Filed December 19, 2007**

---

GARY R. WADE, J., dissenting.


Because it is my view that there was evidence to support the conclusion that Husband, by virtue of his long-term employment with the company, substantially contributed to the preservation and appreciation of his separately owned stock, I would hold that any increase in value during the course of the marriage should qualify as marital property.  I would also hold that the chancellor's assessment of the appreciation amount was likewise supported by the evidence.  On these important points, the chancellor, who saw and heard the witnesses firsthand, should be afforded deference under our limited scope of review.  The Court of Appeals, which upheld the ruling of the chancellor as to these specific issues, should have been affirmed in that regard.

As indicated in the majority opinion, "'[m]arital property' includes . . . any increase in value during the marriage of, property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(B) (2005). "[S]ubstantial contribution" may include, but is not limited to, "the <u>direct or indirect contribution of a spouse as homemaker</u>, wage earner, parent or family financial manager . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(D) (2005) (emphasis added).

Our statute, therefore, requires the substantial contribution to the preservation and appreciation of separate property of both the husband and the wife before an increase in the value of separately owned property may be considered as a part of the marital estate.  That a homemaker may contribute indirectly to appreciation, as provided by section 36-4-121(b)(1)(D), is a legislative policy designed to assure that spouses, after a divorce, are not economically disadvantaged by a decision to contribute to a marriage by rearing children and managing the complex affairs of the household, rather than devoting their labors to an outside-the-home job.  <u>See</u> Tenn. Code Ann. § 36-5-121 (2005); <u>see generally</u> Cynthia Starnes, <u>Divorce and the Displaced Homemaker: A Discourse on Playing with Dolls, Partnership Buyouts and Dissociation Under No-Fault</u>, 60 U. Chi. L. Rev. 67

(1993). Even when one spouse has made laudable contributions as a homemaker, however, the statute "does not permit the conclusion that any increase in value during marriage constitutes marital property." Harrison v. Harrison, 912 S.W.2d 124, 127 (Tenn. 1995) (emphasis omitted). For the purposes of section 36-4-121(b)(1)(B), the contributions of a husband and wife must satisfy two requirements: they must be "real and significant," Brown v. Brown, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994), and there must be "some link between the spouses' contributions" and the increase in value during the marriage. McFarland v. McFarland, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, *6 (Tenn. Ct. App. Aug. 6, 2007); see also Langschmidt v. Langschmidt, 81 S.W.3d 741, 746 (Tenn. 2002).

Here, Wife "substantially contributed" as a mother, the caretaker of the residence, and the manager of the household finances. Husband did not contest that Wife's labors as a homemaker enabled him to focus his effort and attention more fully on his work, rather than expending that time on child care and household management. The question then became whether Husband's contributions were significant and, if so, whether there was a link between his efforts and the preservation or appreciation in value. There is a nexus to the increase in value in the stock only when Husband's efforts also meet the requirements of section 36-4-121(b)(1)(B).

Despite his status as a shareholder and a long-term employee of the company, Husband, during the course of the trial, downplayed the importance of his job responsibilities in the business, which he described as a mid-level management position. He claimed that his performance did not add to either the preservation of or growth in value of the company as required by statute. More specifically, he asserted that the rise in value of the stock he had received by gift was due solely to the "removal of the restrictions" against his sale or transfer and bore no relationship to his efforts in the business during his years of employment. In fairness to the majority opinion's conclusion that his contributions were insubstantial, there was testimony indicating that, on occasion, Husband was irresponsible in his use of alcohol. In those circumstances, it is perhaps a natural inference that any drinking problem may have had an adverse effect on Husband's work and thereby limited his contributions to the business. Some evidence suggested that Husband had consumed alcohol while in the physical custody of the minor child, which violated the order governing visitation. Although Husband denied the claim and contended that he had "never" been intoxicated, other testimony contradicted that assertion. For example, Larry Burkes, a witness on behalf of Wife, stated that Husband smelled of alcohol when he returned the child to Wife's residence. Also, the child recalled that on one occasion Husband had smelled of alcohol while charged with his care. A banker, testifying on behalf of Wife, acknowledged that he had seen Husband intoxicated in the parking lot of a restaurant. Finally, Carol Goolsby, a parenting coordinator for Putnam County, testified to another occasion, claiming she had seen Husband in an intoxicated state outside a restaurant in 2003. All of the testimony, however, was related to the primary residential parent issue. The entirety of the evidence was favorable to Wife on that point. The unappealed part of the judgment reflects that. Notwithstanding the nature of this testimony, I did not infer that any of these incidents affected the quality of Husband's service to the company or the importance of his position in its management. Neither did the chancellor.

The chancellor concluded that Husband had been far too modest in assessing his level of participation in the preservation and appreciation of the company's stock value. The proof in the record established that during the approximately twenty-four years of his employment until the company was sold, Husband performed a wide range of tasks for the company, beginning at an entry level position and then taking on increasing responsibilities as time passed, some routine and others more closely related to the management and growth of the business. Although Husband contended that he did not make policy or organizational decisions for the company and claimed that absent the cooperation and assistance of others, he could not choose the service routes, negotiate new acquisitions, make purchase decisions, or collect the accounts receivable, he did acknowledge that he had a role in those processes. Further, an independent witness confirmed that Husband was, in fact, regularly out of town on an overnight basis for business purposes. Indeed, the record establishes that he, as a long-term employee, had a hand in the management of the company's day-to-day affairs. The Keyt family owned almost seventy-eight percent of the stock at the time of the sale. There is little indication in this record of what responsibilities his father had. There is no proof that any other member of the family participated in the day-to-day management. The circumstances suggest that Husband enjoyed a position of trust, both from the perspective of the extended Keyt family and that of the other shareholders. For example, he was the designated representative of Service Transport in the sale to STACAS Holdings, hardly the role of a mid-level employee. As shareholder representative, he participated as a signatory in a complex transaction involving a business with a negotiated value of $18,000,000. While Husband worked for the company, he exercised hiring powers, oversaw key instances of expansion, and solved problems at the company's various terminals from his position at the home office. In my assessment, Husband was significantly more involved in the operation and expansion of the business than the husband in Sherrill v. Sherrill, 831 S.W.2d 293, 294 (Tenn. Ct. App. 1992), who performed poorly in his job, or Harrison, whose one-half interest in real property, to which he made no contribution, increased in value because an interstate was built. Harrison, 912 S.W.2d at 125.

In this instance, the chancellor accredited the testimony of Wife, who had the burden of proving the substantial contribution by each party before any increase in value of the separate property could be considered as a part of the marital estate. See Cutsinger v. Cutsinger, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). At trial, the testimony of Husband was afforded less credibility on this point. The chancellor had an adequate evidentiary basis to determine that Husband contributed substantially to the preservation and appreciation of the stock – both by virtue of his position of trust and the length and nature of his employment. This link to the preservation and appreciation of the stock was not severed, according to the determinations reached by the chancellor, by any factors outside of the business. In summary, I do not believe the evidence preponderated against the findings of the chancellor as confirmed by the the Court of Appeals. Whether Husband's contribution was substantial, as found by the chancellor, is a factual issue, which is subject to a limited scope of review. Tenn. R. App. P. 13(d).

As to the issue of evaluation of the stock, Tennessee Code Annotated section 67-8-107(a) (2006) requires that valuations for gift tax purposes must reflect a gift's "full and true value at the time of the making of the gift." As McNabb testified, however, the amount claimed on gift tax forms

may not always reflect the figure that would be reached using another method of valuation. A variety of methods are used to evaluate corporate stock. See Blasingame v. Am. Materials, Inc., 654 S.W.2d 659, 665-67 (Tenn. 1983). Thus, while the gift tax valuation is evidence of stock value at the time of the transfer, it is not solely determinative. In response to the request for admissions, Husband stated his belief that "the information contained in the Tennessee State Gift Tax Returns of his father, Widney C. Keyt . . . is correct [and] [t]hat Widney C. Keyt would testify to the facts as they are set forth in the attached copies of his Tennessee State Gift Tax Returns." Husband's opinion as to the correctness of the information in the forms, including the statements of gift value, and the stipulation of Widney Keyt's testimony are important facts in evidence. Neither of these admissions, however, foreclosed other testimony relevant to the of the actual value of the stocks – a fact that is distinguishable from Husband's beliefs or even Widney Keyt's testimony. In consequence, Husband was not precluded by the admissions from presenting other testimony as to the value of the stocks.

Nevertheless, the chancellor's use of the gift tax appraisal as the beginning point was not, in my view, erroneous. That the collective decision of the shareholders to sell, thereby removing the other restrictions on Husband's stock, triggered some of the increase is not incompatible with the evaluation of the chancellor and should not sever the link between Husband's efforts as a shareholder and employee with the increased value of his holdings. Further, our statute is designed to classify "any increase during the marriage" as a part of the marital estate, so long as substantial contributions are made by each party.

Market outcomes are inherently the result of many factors. Our statute does not require trial courts to tackle every detail. Further, it does not require any discount in the amount of the appreciation that qualifies as marital property depending on the relative effect of those various factors. It only requires active contribution by each spouse to whatever appreciation in value occurred. The discretion afforded the chancellor as to the distribution of the marital estate is the ultimate means of enabling a fair and equitable division. The chancellor's award of 37.5% to Wife, as opposed to a larger percentage, reflects an appropriate exercise of that discretion in the allocation of the marital estate.

### Summary

In my opinion, the evidence does not preponderate against the chancellor's finding that Husband substantially contributed to the "preservation and appreciation" of the Keyt family business. Moreover, Wife substantially contributed in her capacity as a homemaker and primary caregiver, thereby affording Husband the opportunity, during their marriage of several years, to concentrate on his role in the company. Further, the chancellor was required to exercise discretion in determining the extent of the increase in the value of the stock during the course of the marriage. His decision to use the gift tax return appraisal, among other available resources, in making that assessment is reasonable under these circumstances, and the evidence in the record does not preponderate otherwise. No other testimony provided is so persuasive as to lead me to conclusions different from

those reached by the chancellor.  The affirmance by the Court of Appeals on these important points was, in my view, entirely appropriate.  I must, therefore, respectfully dissent.


                                    _____
                                    GARY R. WADE, JUSTICE