Susan Duke **BROWN**, Plaintiff/Appellant,

v.

**Samuel Joseph BROWN,
Defendant/Cross–
Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 7, 1994.

Permission to Appeal Denied by
Supreme Court Dec. 28, 1995.

David D. Wolfe, Dickson, for appellant.

G. Whitney Kemper, Kemper, McLemore & Okerman, Dickson, for cross-appellant.

## *OPINION*

KOCH, Judge.

This appeal concerns the financial aspects of the dissolution of a 21–year marriage. Both parties sought a divorce in the Chancery Court for Dickson County. The trial court conducted a bench trial and awarded the divorce to the wife. The trial court divided the marital estate, declined to award the wife spousal support, and directed the husband to pay $10,000 to defray the wife's legal expenses. Both parties have appealed. The wife takes issue with her share of the marital estate and with the trial court's refusal to award spousal support. The husband takes issue with the classification of his interest in the family business as marital property and with the award for the wife's legal expenses. We have determined that the division of the marital property must be revised and that the wife is entitled to temporary spousal support. We have also deter-

mined that the wife is not entitled to an additional award for her legal expenses.

## I.

Susan Duke Brown and Samuel Joseph Brown were married on March 1, 1969 in Dickson County. Ms. Brown was a 20–year-old public school teacher who was also employed as a school bus driver. Mr. Brown was 23 years old and was employed at an automobile dealership. The parties have no children.

Mr. Brown went to work for his father's concrete block business in 1971. His father incorporated the business in April 1972 as Brown's Concrete and Block Company, Inc. ("Brown's Concrete"). Between October 1972 and September 1978, Mr. Brown's father transferred 166 shares of the company's stock to Mr. Brown, 166 shares to Mr. Brown's brother, and 150 shares to Mr. Brown's mother. When Mr. Brown's father decided to turn over the business to his two sons, the corporation redeemed the shares of Mr. Brown's father and mother, leaving Mr. Brown and his brother as the only shareholders. Mr. Brown serves as the company's secretary-treasurer and is responsible for production at the block plant and for the maintenance of the company's vehicles and equipment.

The parties built a home on Highway 47 in 1973. They lived modestly until Mr. Brown's income increased substantially after he and his brother assumed control of the family business. During the later years of the marriage, Mr. Brown earned between $175,000 and $230,000 each year, while Ms. Brown earned between $30,000 and $33,000. Their combined income afforded the parties an opulent lifestyle. They traveled abroad and acquired airplanes, numerous automobiles, and several horses. Ms. Brown was also able to accumulate an expensive wardrobe.

The parties separated in February 1990 when Mr. Brown left Ms. Brown for another woman. Mr. Brown remained in the parties' home, and Ms. Brown purchased a modest condominium in Nashville. Ms. Brown filed for divorce in late February 1990, and Mr. Brown counterclaimed for divorce shortly thereafter. Mr. Brown agreed to pay Ms. Brown $2,500 per month as alimony pendente lite.

Most of the testimony at the May 1992 trial related to the classification and valuation of Mr. Brown's interest in Brown's Concrete. The trial court determined that the marital estate consisted of over $2,000,000 in real and personal property, including Mr. Brown's interest in Brown's Concrete which the trial court valued at $1,250,000. The trial court awarded Ms. Brown property worth approximately $425,000, a one-half interest in two small unvalued corporations, an unvalued portion of the parties' crystal, silverware, and china, and $250,000 for her share of Mr. Brown's interest in Brown's Concrete. The trial court declined to award Ms. Brown spousal support but directed Mr. Brown to pay her $10,000 for her legal expenses.

Both Mr. Brown and Ms. Brown have appealed. The issues on appeal relate to the classification and valuation of Mr. Brown's interest in Brown's Concrete, the fairness of the division of the marital estate, Ms. Brown's need for spousal support, and Mr. Brown's obligation to pay $10,000 to defray Ms. Brown's legal expenses.

## II.

■ We turn first to the classification of Mr. Brown's interest in Brown's Concrete. Mr. Brown insists that his interest in the family business should not have been classified as marital property because the parties themselves did not treat it as marital property and because Ms. Brown made no direct contributions to the business. We agree with these assertions as far as they go; however, we find that the increase in the value of Mr. Brown's interest in Brown's Concrete during the marriage was marital property.

### A.

■ The division of a marital estate necessarily begins with the classification of the parties' property as either marital or separate property. *McClellan v. McClellan,* 873 S.W.2d 350, 351 (Tenn.Ct.App.1993); *Batson v. Batson,* 769 S.W.2d 849, 856 (Tenn.Ct.App. 1988). Tenn.Code Ann. § 36–4–121 (1991) provides the ground rules for this task.

"Separate property" includes "[a]ll real and personal property owned by a spouse before marriage," Tenn.Code Ann. § 36–4–121(b)(2)(A), and "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." Tenn.Code Ann. § 36–4–121(b)(2)(D). "Marital property" includes "all real and personal property ... acquired by either or both spouses during the course of the marriage ...," Tenn.Code Ann. § 36–4–121(b)(1)(A), and "income from, and any increase in value during the marriage, of property determined to be separate property ... if each party substantially contributed to its preservation and appreciation ..." Tenn. Code Ann. § 36–4–121(b)(1)(B).

Determining whether a spouse has made a substantial contribution to the preservation and appreciation of the other spouse's separate property is a question of fact. *Sherrill v. Sherrill*, 831 S.W.2d 293, 295 (Tenn.Ct.App.1992). As a result of a 1987 amendment to the property division statute,[1] substantial contributions are not limited to direct contributions but also include indirect contributions such as those as a "homemaker, wage earner, parent or family financial manager." Tenn.Code Ann. § 36–4–121(b)(1)(C). In order to be substantial, a spouse's contributions must be real and significant. They need not, however, be monetarily commensurate to the appreciation in the separate property's value, nor must they relate directly to the separate property at issue. *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 623 (Tenn.Ct.App.1989).

### B.

The trial court's reasoning with regard to the classification of Mr. Brown's interest in Brown's Concrete is less than clear. A fair interpretation of the memorandum opinion, however, is that the trial court determined that Mr. Brown's interest in the family business was his separate property because it was a gift to him alone from his father. The trial court also concluded that the increase in the value of Mr. Brown's interest was marital property. This conclusion could only have been based upon a finding that Ms. Brown made substantial contributions to the preser-

vation and appreciation of Mr. Brown's interest in the company. Accordingly, our focus must be on whether the evidence preponderates against a finding that Ms. Brown made substantial contributions to the preservation and appreciation of Mr. Brown's interest in Brown's Concrete.

Ms. Brown made no direct contributions to Brown's Concrete. She concedes that she played no role in the business, and the record contains no evidence that she made any financial contributions to the company. On the other hand, the record contains evidence of Ms. Brown's indirect contributions as a homemaker and wage earner. She testified, without contradiction, that she worked throughout the entire marriage and that she held down two jobs for fifteen years. She also testified that all her income was commingled with Mr. Brown's income and was used to pay joint household expenses. In addition, Ms. Brown testified that she was a good wife and daughter-in-law and that she "took care of Sammy [Mr. Brown] and helped take care of his Mom and Dad."

A spouse's financial contributions to the family's expenses may be considered contributions to the appreciation or preservation of the other spouse's separate property. *Clutts v. Clutts*, App. No. 02A01–9203–CH–00076, slip op. at 4, 18 T.A.M. 32–17, 7 T.F.L.L. 11–22, 1993 WL 266827 (Tenn.Ct. App. July 16, 1993); *Burks v. Burks*, Dyer Eq. No. 6, slip op. at 8, 16 T.A.M. 11–9, 5 T.F.L.L. 6–21, 1991 WL 12846 (Tenn.Ct.App. Feb. 8, 1991). Financial contributions are not rendered less substantial simply because the other spouse's financial contributions to the family's finances were far greater. *Remeika v. Remeika*, App. No. 89–310–II, slip op. at 5–6, 15 T.A.M. 15–24, 4 T.F.L.L. 7–8, 1990 WL 18178 (Tenn.Ct.App. Mar. 2, 1990).

Ms. Brown did not dwell on her contributions as a homemaker. She stated simply that she "took care of Sammy" and that she did "just whatever [Mr. Brown's parents] needed." Neither Mr. Brown nor his father disputed Ms. Brown's characterization of her role. This unembellished evidence, together with the evidence of her financial contribu-

---

1. Act of Mar. 30, 1987, ch. 122, § 1, 1987 Tenn. Pub. Acts 167.

tions to the family, support a finding that Ms. Brown made substantial indirect contributions to the preservation and appreciation of Mr. Brown's interest in Brown's Concrete. These contributions support the conclusion that the increase in the value of Mr. Brown's interest in the family business during the marriage was marital property.

### III.

We now turn to the manner in which the trial court divided the marital estate. Ms. Brown asserts that the division was inequitable because she received only twenty percent of the increase in the value of Mr. Brown's interest in Brown's Concrete. We have concluded that the manner in which the trial court divided Mr. Brown's interest in Brown's Concrete was appropriate; however, we have also concluded that the distribution of the entire marital estate disproportionately favored Mr. Brown.

property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983). Their decisions must be guided by the factors in Tenn.Code Ann. § 36–4–121(c), *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.1988), and must be made without regard to marital fault. Tenn.Code Ann. § 36–4–121(a)(1); *Bowman v. Bowman*, 836 S.W.2d 563, 567–68 (Tenn.Ct.App.1991). The decision is not a mechanical one and is not rendered inequitable because it is not precisely equal, *Batson v. Batson*, 769 S.W.2d at 859, or because both parties did not receive a share of each piece of property. *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn.Ct.App.1990). Appellate courts defer to the trial courts in these matters unless their decisions are inconsistent with the factors in Tenn.Code Ann. § 36–4–121(c) or are not supported by the preponderance of the evidence. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449–50 (Tenn.Ct.App.1991).

### A.

Trial courts have wide latitude in fashioning an equitable division of marital

### B.

The trial court distributed the marital estate in the following manner:

| Susan Duke Brown | | Samuel Joseph Brown | |
|---|---|---|---|
| ½ of Mr. B's investment | $ 62,500 | ½ of Mr. B's investment | $ 62,500 |
| ½ of Roncor, Inc. | | ½ of Roncor, Inc. | |
| ½ of NBS, Inc. | | ½ of NBS, Inc. | |
| ½ of marital residence | 99,375 | ½ of marital residence | 99,375 |
| ½ of Dickson Plaza Theatre property | 20,120 | ½ of Dickson Plaza Theatre property | 20,120 |
| ½ of property & barn | 26,058 | ½ of property & barn | 26,058 |
| ½ of savings account | 108,000 | ½ of savings account | 108,000 |
| ½ of Farmers & Merchants Bank stock | 12,500 | ½ of Farmers & Merchants Bank stock | 12,500 |
| ½ of Merrill Lynch account | 15,000 | ½ of Merrill Lynch account | 15,000 |
| 1990 Buick | 13,900 | Farm equipment [2] | 4,300 |
| 1984 Cadillac | 2,200 | MG Kit Car | 6,000 |
| Cessna Airplane | 26,500 | Saddles & tack | 650 |
| State Retirement | 22,000 | Knife collection | 5,000 |
| IRA | 15,700 | IRA | 30,000 |
| Annuity | 1,000 | | |
| Portion of household furniture | | Portion of household furniture | |
| Portion of China, Crystal & Silver | | Portion of China, Crystal & Silver | |
| Share of increase in value of Mr. Brown's interest in Brown's Concrete | 250,000 | Share of increase in value of Mr. Brown's interest in Brown's Concrete | 945,000 |
| | $674,853 | | $1,334,503 |

2. The farm equipment includes a Kubota tractor, a Kubota mower, a power washer, and tools.

The value of this property is based upon Mr. Brown's answers to Ms. Brown's interrogatories.

Mr. Brown did not receive a disproportionate share of the marital interest in Brown's Concrete. Ms. Brown was not entitled to an equal share of this asset because of her concession that she was never involved with any aspect of the business. Her indirect contributions entitle her to a share of the property, and a twenty percent share is equitable in light of the benefits she received from Mr. Brown's large salary during the last ten years of the marriage.

The size of Mr. Brown's interest in Brown's Concrete relative to the other marital property, coupled with the trial court's decision to award Mr. Brown eighty percent of the value of the asset, skewed the overall distribution of the marital property. The trial court essentially awarded Mr. Brown two-thirds and Ms. Brown one-third of the marital estate. This distribution is inequitable in light of the duration of the marriage, the parties' relative capacity to acquire other capital assets, and the parties' post-divorce economic circumstances. In accordance with Tenn.Code Ann. § 36–4–121(f)(1), we have determined that Ms. Brown should receive an additional $120,000 cash award. Mr. Brown may pay this amount in a lump sum or, in accordance with Tenn.Code Ann. § 36–4–121(f)(2), may pay it to Ms. Brown at the rate of $12,000 per year for ten years without interest.

## IV.

■ Ms. Brown takes issue with the trial court's decision that she was not entitled to spousal support. She asserts that she needs additional support to enable her to continue to live in a style approaching the style she enjoyed during the last years of the marriage. While we do not concur that Ms. Brown is entitled to be maintained indefinitely at her pre-divorce standard of living, we have concluded that Ms. Brown is entitled to temporary periodic alimony.

## A.

■ Trial courts have broad discretion concerning the amount and duration of spousal support. *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn.Ct.App.1993); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn.Ct.App.1989).

These determinations are factually driven and require a balancing of the factors contained in Tenn.Code Ann. § 36–5–101(d)(1) (Supp.1994). *See Williams v. Williams*, 146 Tenn. 38, 46, 236 S.W. 938, 940 (1922); *Stone v. Stone*, 56 Tenn.App. 607, 615–16, 409 S.W.2d 388, 392–93 (1966). As a general matter, we are disinclined to alter a trial court's decision unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct.App.1988); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn.Ct.App.1986).

## B.

■ Ms. Brown is 46 years old and in good health. She is a college graduate and is a tenured public school teacher. While she has the assurance of steady employment, her age, training, and experience indicate that it is unlikely that she will be able to obtain additional education and training that will significantly increase her earning power or her ability to accumulate capital assets. Accordingly, the record does not support awarding Ms. Brown either long-term or rehabilitative spousal support.

The parties enjoyed an opulent lifestyle prior to the divorce, and Ms. Brown naturally desires that this continue after the divorce. Accordingly, she argues that the trial court should have avoided placing her in a financial position worse than the one she enjoyed prior to the divorce. *See Duncan v. Duncan*, 686 S.W.2d 568, 572 (Tenn.Ct.App.1984); *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn.Ct.App.1980).

■ Spousal support awards are not intended to be punitive. *McClung v. McClung*, 29 Tenn.App. 580, 584, 198 S.W.2d 820, 822 (1946). While this court has recognized that divorce should not inflict undue economic hardship on an innocent spouse, we have never held that this principle should override the statutory factors traditionally considered by the courts. Thus, the idea that a divorce should not economically prejudice an innocent spouse must be tempered by

the factors in Tenn.Code Ann. § 36–5–101(d)(1). *Shadoin v. Shadoin,* App. No. 85–218–II, slip op. at 6–7, 11 T.A.M. 45–10, 1986 WL 8975 (Tenn.Ct.App. Aug. 20, 1986).

Mr. Brown's income has declined along with the fortunes of Brown's Concrete. The record contains some indication that he and his brother are not managing the family business wisely and that the future of the business is guarded. Mr. Brown's ability to pay substantial spousal support or alimony would be seriously impaired were his business to fail. Notwithstanding these uncertainties, Mr. Brown is able to pay support and other statutory factors favor awarding Ms. Brown some periodic alimony.[3]

The parties' 21–year marriage ended because Mr. Brown left Ms. Brown for another woman. Mr. Brown received a substantially greater share of the marital estate, including valuable income-producing property. His future ability to earn income and to acquire capital assets greatly exceeds Ms. Brown's ability. Accordingly, we have determined that Mr. Brown should pay Ms. Brown $500 per month as alimony in solido for ten years. This obligation should not be subject to modification or extension because of later changes in circumstances.

## V.

The final issue concerns the trial court's decision to award Ms. Brown $10,000 to defray her legal expenses. Mr. Brown argues that Ms. Brown was not entitled to this award because she received sufficient funds and assets with which to pay her attorney. We agree in light of the modifications we have made with regard to the division of the marital estate and the periodic alimony award.

Trial courts have discretion to make awards to help a spouse defray his or her legal expenses in a divorce case. *Fox v. Fox,* 657 S.W.2d 747, 749 (Tenn.1983); *Loyd v. Loyd,* 860 S.W.2d at 413. These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *Houghland v. Houghland,* 844 S.W.2d 619, 623 (Tenn.Ct.App.1992); *Ingram v. Ingram,* 721 S.W.2d at 264, or would be required to deplete his or her resources in order to pay these expenses. *Harwell v. Harwell,* 612 S.W.2d 182, 185 (Tenn.Ct.App.1980).

In addition to her periodic alimony, Ms. Brown will receive over $800,000 as a result of the modified division of the marital property. Approximately $145,000 of this award is in cash, and another $370,000 will be in cash payments over ten years. These awards provide Ms. Brown with sufficient resources to pay her legal expenses. Accordingly, we vacate the portion of the trial court's order awarding Ms. Brown $10,000 for the payment of her attorney's fees.

## VI.

We affirm the judgment of the trial court as modified herein and remand the case to the trial court for whatever other proceedings may be required. We tax the costs of this appeal to Samuel Joseph Brown and his surety for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.

---

**3.** These factors include the duration of the marriage [Tenn.Code Ann. § 36–5–101(d)(1)(C)], the parties' financial resources [Tenn.Code Ann. § 36–5–101(d)(1)(A)], the parties' separate assets [Tenn.Code Ann. § 36–5–101(d)(1)(G)], the man- ner in which the trial court divided the marital property [Tenn.Code Ann. § 36–5–101(d)(1)(H)], and the parties' relative fault [Tenn.Code Ann. § 36–5–101(d)(1)(K)].