IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
OCTOBER 3, 2000 Session


LINDA MAY TAYLOR v. JAMES ARNOLD TAYLOR

Appeal from the Circuit Court for Bradley County
No. V-99-388     Lawrence H. Puckett, Judge

FILED NOVEMBER 17, 2000

No. E2000-00476-COA-R3-CV

_____

This appeal arises from a divorce in which the Trial Court awarded Linda May Taylor ("Wife"), age 58, alimony until she reaches age 65 or she retires, whichever occurs first. Wife was also awarded the parties' home. The Trial Court granted James Arnold Taylor ("Husband"), age 61, his interest in the marital home but ordered that Wife does not have to pay Husband for his interest in the marital home until Wife reaches age 65. Husband appeals. We affirm.


Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed; Case Remanded.


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES C. SUSANO, J. joined.

Randy Sellers, Cleveland, Tennessee, for the appellant, James Arnold Taylor.

Robert S. Thompson, Cleveland, Tennessee, for the appellee, Linda May Taylor.


OPINION

Background

        After a thirty-nine-year marriage, the Plaintiff, Linda May Taylor ("Wife"), was awarded a divorce on the grounds of inappropriate marital conduct of the Defendant, James Arnold Taylor ("Husband"). The parties have two adult children who no longer live with them. Wife, age 58 at the time of trial, has a high school diploma and provides childcare in her home for up to 50 hours per week. Wife also works part-time for four to five evenings per week as a floor cleaner. Wife earns approximately $1,220 per month from her childcare job, and $540 per month from her

part-time employment. The record indicates that Husband did not want Wife working outside of the home, which led to her self-employment in childcare beginning approximately thirty-five years ago.

Husband has a high school diploma plus two years of college classes. At the time of trial, Husband was 61 years old. For approximately 28 years, Husband has been employed as a contract engineer. The nature of his work is such that he is an independent contractor who works for a period of time at a job and moves on when that job is completed. As a result, he is intermittently employed and his income level fluctuates. Over the relevant five-year period, Husband's average income was $61,200 with a high of $100,000 in 1997, and a low of $22,000 in 1999. At the time of trial, Husband earned $45 per hour and had just completed a four-month stint where he earned $14,000 per month, including overtime. Husband was scheduled to begin another job where he anticipated earning $7,200 per month. The proof at trial also established that, in addition to his hourly wages, Husband received a per diem for his living expenses in the amount of $516 per month during his recent employment.

The Trial Court found that the proof supported Wife's allegation of inappropriate marital conduct. Wife testified that throughout their marriage, she has endured Husband's violent temper and verbal abuse. The parties separated after a violent confrontation which occurred after Husband learned that Wife had placed her inheritance in a separate savings account instead of sharing the money with Husband. Thereafter, Husband threatened to kill Wife and physically assaulted her. Wife testified that she had deposited her inheritance, approximately $58,000, in her own account because the parties had no retirement savings.

Wife testified that between her two jobs, she earns approximately $1,760 per month in gross income. After deductions for taxes and health insurance, Wife nets $1,253 per month. Her monthly expenses totaled $2,408 per month. Without assistance, Wife would have a deficit of $1,155 per month. The Trial Court recognized that without alimony, Wife would not be able to meet her monthly expenses. The Trial Court expressly found that due to Husband's greater earning capacity, better health, and his fault, Wife is entitled to alimony in the amount of $1,200 per month until age 65 or when she retires, whichever occurs first.

With respect to the parties' marital property, the Trial Court essentially made a 50/50 distribution, awarding the house to Wife but giving Husband his net equity in the house in the amount of $16,466. The Trial Court ordered that Wife does not have to pay Husband the $16,466 until the year 2006 which is when Wife reaches age 65. The Trial Court further provided that Husband shall have a lien on the property in the amount of $16,466 drawing interest at the rate of 10% per annum until the $16,466 is paid by Wife to Husband. Further, the Trial Court provided that if Husband fails to pay the $1,200 per month alimony, Wife is entitled to a set-off and the $16,466 owed to Husband shall be reduced by that amount. This award by the Trial Court enables Wife to keep the house so that she has a place to live and can continue her childcare business from which she earns the majority of her income. Meanwhile, Husband's interest is protected by his lien on the property. The Trial Court's overall division of the parties' assets and liabilities resulted in an award to Husband in the amount of $55,462 and an award to Wife in the amount of $54,964. Husband

appeals that portion of the Trial Court's decision which delays for seven years Wife's payment to Husband of Husband's interest in the marital residence, and the award of $1,200 per month as alimony for approximately seven years or until Wife retires.

## Discussion

On appeal, Husband raises the following issues: 1) whether the Trial Court erred in not ordering the parties' home sold; 2) whether the Trial Court erred in delaying Husband's receipt of his net equity in the parties' home; and 3) whether the evidence preponderates against the Trial Court's award of alimony to Wife until she reaches age 65 or she retires, whichever occurs first. Wife does not dispute the Trial Court's decision and contends that it is supported by a preponderance of the evidence.

Our review is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. Civ. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). As for the Trial Court's conclusions of law, this Court will conduct a *de novo* review with no presumption of correctness. *See Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Courts have wide discretion when determining how to divide a marital estate in an equitable manner. *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983). It is well-settled that the court's goal in every divorce case is to "divide the parties' marital estate in a just and equitable manner." *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (citations omitted). Moreover, this Court has held that "[i]n the final analysis, the justness of a particular division of the marital property . . . depends on its final results." *Id.* On appeal, we must consider the fairness of the overall division of the marital estate in order to determine if the division was proper. *See Brown v. Brown,* 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994).

The Trial Court's exercise of discretion is guided by the factors listed in Tenn. Code Ann. § 36-4-121(c), and by other factors made relevant by the facts of the particular case. *Denton v. Denton,* 902 S.W.2d 930, 932 (Tenn. Ct. App. 1995). Tenn. Code Ann. § 36-4-121(c), provides:

> In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

In this case, we find no abuse of discretion in the Trial Court's decision to award the parties' home to Wife rather than ordering the home be sold. As discussed, Wife conducts a childcare business in the parties' home and has done so for many years. The proof established that she earns approximately $1,220 month from this job. In contrast, she earns only $540 per month from her part-time employment as a floor cleaner. Moreover, throughout their marriage, Husband did not want Wife working outside of the home which left her few options for employment opportunities. If the house was sold, the evidence showed that Wife would experience difficulty maintaining her childcare business. Accordingly, we hold that the Trial Court did not err in awarding the house to Wife instead of ordering that it be sold.

Similarly, Husband's argument that the Trial Court erred in its decision to delay his receipt of his net equity in the parties' home also fails. Husband contends that Wife's award of liquid assets enables her to pay Husband the $16,466, or alternatively, that Wife should pay this sum from her inheritance. In light of the factors listed in Tenn. Code Ann. § 36-4-121 (c), we affirm the Trial Court's decision.

It is true that when dividing assets and liabilities, courts may consider a spouse's separate property. We find, however, that due to Wife's financial needs and circumstances, the Trial

-4-

Court committed no error in not requiring Wife's inheritance be used to pay Husband immediately. *See* Tenn. Code Ann. § 36-4-121 (c)(5). The proof established that although the parties are fast-approaching retirement age, they have no retirement savings due to Husband's mismanagement of their money and that Wife will need her inheritance for her retirement. Moreover, the Trial Court held that the amount of Husband's net equity could be offset for any unpaid alimony for approximately one year in if Husband experienced difficulty in meeting this obligation.

Accordingly, we hold that the Trial Court did not err in its determination that Wife receive the parties' home and that Husband receive his net equity in the home, plus interest, in seven years. We find the Trial Court's decision to be equitable under these circumstances. The Trial Court fashioned a remedy that both protects the Husband as far as receiving his $16,466 plus interest and protects Wife's receiving alimony from Husband for seven years. This remedy also gives Wife a place to live and allows her to continue her childcare business. The Trial Court acted well within its discretion in fashioning this division of the marital estate to arrive at this equitable distribution.

Husband's final issue involves the Trial Court's grant of alimony to Wife in the amount of $1,200 per month until Wife reaches 65 or she retires, whichever event occurs first. Husband argues that the preponderance of the evidence weighs against this award because it is based largely upon Wife's need to make the house payment and because the Trial Court failed to consider Husband's age at the time of trial. If Husband has to pay alimony until Wife reaches age 65, he will have this financial obligation until age 68.

This Court has held that "[t]rial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). Accordingly, a decision of the trial court regarding this issue will not be disturbed on appeal "unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id.* When determining whether a spouse should receive support, trial courts are to follow Tenn. Code Ann. § 36-5-101(d)(1), which provides:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

While all relevant factors must be considered, need and the ability to pay are the critical factors in setting the amount of an alimony award. *Anderton*, 988 S.W.2d at 683. Discussing the intent behind alimony, this Court has held that:

[t]he purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce.

*Id.* at 682.

The evidence does not preponderate against the Trial Court's decision to award Wife alimony in the amount of $1,200 per month. The proof at trial showed that between her two jobs, Wife earns a monthly net income of $1,253. Wife's monthly expenses, which cover only her basic needs, total $2,408 and are almost double her monthly net income. As a result, Wife has a monthly deficiency of $1,155 which is covered by the Trial Court's award of alimony in the amount of $1,200 per month.

In contrast, Husband earns $45 per hour as a contract engineer and over the past five years, has averaged $61,000 per year, or $5,080 per month, in gross income. In 1997, Husband earned $100,00 gross income. In addition, Husband's Income and Expense Statement filed with the Trial Court reflects that Husband also received a monthly per diem in the amount of $516 for his living expenses from his recent employer. The preponderance of the evidence clearly demonstrates that Husband's earning capacity is much greater than Wife's and that he has many more employment opportunities by comparison. Moreover, we reject Husband's argument that Wife should not receive alimony because this award is based largely upon Wife's need for assistance in making the house payment in the amount of $780 per month. As discussed, Wife earns most of her income from her childcare business which is and has been conducted in her home. The Trial Court recognized, and we agree, that without her childcare business, Wife would need more financial assistance which could increase the alimony award. We hold that the Trial Court did not err in ordering Husband to pay Wife alimony in the amount of $1,200 per month until she reaches age 65 or retires, whichever occurs first.

Wife asks that Husband's appeal be treated as a frivolous appeal and that she be awarded her attorney fees and costs incurred for this appeal. We decline to hold that this is a frivolous appeal, and further decline to award Wife any additional attorney fees and costs incurred by this appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this matter remanded for further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. Costs of this appeal are taxed to the Appellant, James Arnold Taylor, and his surety.

_____
D. MICHAEL SWINEY, JUDGE