# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 5, 2003 Session

## LORI ANN BATES v. JOSEPH LYNN BATES

**A Direct Appeal from the Chancery Court for Robertson County**
**No. 15411     The Honorable Carol A. Catalano, Chancellor**

---

**No. M2002-02037-COA-R3-CV - Filed September 22, 2003**

---

This is an appeal from a final decree of divorce, involving issues of appreciation involving Husband's property, award of attorney fees, and division of marital property and debt. Husband appeals. We affirm as modified herein and remand for such further proceedings as may be necessary.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Andy L. Allman, Hendersonville, For appellant, Joseph Lynn Bates

Thomas J. Drake, Jr., Nashville, For Appellee, Lori Ann Bates

## OPINION

Joseph Lynn Bates ("Mr. Bates," or "Husband," or "Appellant") and Lori Ann Bates ("Ms. Bates," "Wife," or "Appellee") were married on April 26, 1997. Prior to their marriage, the couple had lived together for two years. Both parties had one child each from previous relationships. Both children lived with the couple. The day before the marriage, Husband purchased a house and adjoining lot at 2502 Distillery Road, Greenbrier, Tennessee (the "Distillery Road Property"). Husband paid $158,000.00 for the house and lot with a $43,000.00 down payment.

On May 18, 2000, Wife filed a "Complaint for Absolute Divorce," citing grounds of irreconcilable differences, cruel and inhuman treatment, and inappropriate marital conduct. The Complaint alleged that the parties owned marital property at 2502 Distillery Road, Greenbrier, Tennessee, and seeks, *inter alia,* an equitable division of marital property. On July 14, 2000, Husband filed an "Answer and Counter-Complaint." Husband's Answer alleged that Husband

purchased the Distillery Road Property prior to the marriage and that the monies for the down payment from this property came totally from Husband's separate funds. Husband seeks a divorce on the same grounds alleged by Wife. Wife filed her "Answer to Counter-Complaint" on July 20, 2000.

A non-jury trial was held on May 16, 2002. On August 14, 2002, the trial court entered a Final Decree, which reads, in relevant part, as follows:

> This cause came to be heard on the 16th day of May, 2002, before the Honorable Carol Ann Catalano, Chancellor of the Chancery Court for Robertson County, Tennessee, on the complaint for divorce filed by the Wife, answer and counter-complaint filed by the Husband, and on presentation of exhibits, testimony through witnesses and the record as a whole, and, on stipulation of the parties as to grounds, pursuant to T.C.A. 36-4-129, the Court finds it appropriate to make an equitable division of the marital estate and it is, therefore, ORDERED:
>
> 1. That the specific findings of the Court are related in the attached transcript of findings, Exhibit A, and are hereby incorporated by reference herein.
>
> 2. The parties are declared divorced pursuant to T.C.A. 36-4-129.
>
> 3. The Court finds that the property located at 2502 Distillery Road, Springfield, Tennessee, has an appreciation in value between 1997 and May, 2000, and is a part of the marital estate.
>
> 4. Because of the Wife's substantial contribution to the marriage between 1997 and 2000, the Wife is awarded two-thirds of the equity in the home.[1]
>
> 5. The Court has calculated the increase in the value of the home between the date of the marriage in 1997 and May, 2000 to be $33,125.00. The Court grants judgment in favor of Wife, Lori Ann Bates, two-thirds of that increase, or $22,082.00, against the Husband, Joseph Lynn Bates.

[1] It is apparent from our reading of the entire record that the trial court's use of the word "equity" here is in error. The trial court clearly stated from the bench, and both sides concede, that Ms. Bates was actually awarded two-thirds of the *appreciation* value of the home.

6.  The Court does not find that the Wife, Lori Ann Bates, made any contribution to the business of Bates Landscaping and awards all right, title and interest in the business of Bates Landscaping to the Husband, Joseph Lynn Bates.

7.  The Court further awards the 1997 Oldsmobile Achieva automobile to Wife, Lori Ann Bates, who will be responsible for paying the balance of any and all indebtedness owing on that vehicle.

\*                         \*                         \*

9.  The Court finds that the medical bills and credit card debt is marital debt in the amount of $3,804.04 and the Court grants judgment to Lori Ann Bates against Joseph Lynn Bates in the amount of $1,902.02, which sum represents one-half of that amount.

10.  The Husband, Joseph Lynn Bates, is ordered to pay a reasonable attorney's fee to Thomas J. Drake, Jr. Attached is an affidavit of time and activity submitted by Thomas J. Drake, Jr. Attorney fees are awarded to Thomas J. Drake, Jr. in the amount of $3,410.00

Husband filed a Notice of Appeal on August 19, 2002. Husband raises the following issues for review as stated in his brief:

1.  Whether the trial court erred in finding the appreciation in the Distillery Road home and adjoining lot was $33,125.00.

2.  Whether Wife was entitled to two thirds of the appreciation in the Distillery Road home and adjoining lot for her contribution as a homemaker for three years.

3.  Whether Husband was entitled to a set off in the amount of $12,000.00 for his contribution to Wife's automobile.

4.  Whether Husband should be required to pay one half of Wife's credit card debt in her name when she refused to provide copies of statements evidencing charges despite repeated requests.

5.  Whether Husband has the ability to pay an award of attorney's fees.

Wife raises the following additional issues:

-3-

1. Whether the appreciation in the Distillery Road home should have been $48,000.00.

2. Whether the court erred in failing to award the Wife one-half interest in the business.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). We now address Husband and Wife's issue concerning the appreciation of the marital home concurrently.

## Appreciation of the Distillery Road Property

It is undisputed that Husband purchased the Distillery Road Property, which included the home and an adjoining lot, for $158,000.00. Husband purchased this property the day before the wedding and paid a $43,000.00 down payment from his separate funds. In calculating the amount of appreciation in the property over the course of the brief marriage, both parties hired experts to conduct separate appraisals. Wife hired Paula Satterfield to give expert opinion as to the value of the home and adjoining lot. Ms. Satterfield testified, based on her appraisal, that the home was worth $182,000.00 and the adjoining lot was worth $24,000 for a total of $206,000.00 as of May 2000, the time of separation. Husband hired Mike Beshear to conduct an appraisal of the property. Mr. Beshear testified that the value of the home was $155,000.00 as of March 2000. Mr. Beshear did not provide a separate appraisal for the vacant lot. At the close of all testimony, the trial court made the following relevant statements:

> Therefore, the Court considers that Ms. Bates has an interest in the increase in value in the residence. Now what is the increase in value of the residence.
>
> According to Ms. Satterfield, the residence and side lot–and the Court is considering these together. They were bought together. They were maintained together. They go hand in hand in the actual values of what is there as the marital residence...
>
> Ms. Satterfield told us that–and she is a licensed real estate appraiser–that she made a full and complete appraisal of this property as opposed to a limited appraisal, that the average sale price in the county for property was two hundred thousand dollars. She didn't consider that there was a traffic pattern problem in the residence. She thought the whole structure was on concrete blocks including the addition. She made no adjustment for the property being in any FEMA flood area because she said there wasn't any

-4-

real schedule for that and she didn't think the house was in jeopardy. After closely reviewing Ms. Satterfield's opinion of the value of the properties that she compared to this, the Court's opinion was that Ms. Satterfield had utilized the higher value comparables. Therefore, she determined that the marital residence in toto–and that's both lots–was a value of two hundred and six thousand dollars.... Since Mr. Bates paid a hundred and fifty-eight thousand for this property, that means that the increase in value according to Ms. Satterfield is forty-eight thousand dollars.

But that's not all the testimony as to the increase in value with this property. Mr. Beshear testified that in his opinion–and he, too, is a licensed real estate appraiser–the value of the property which contains the house alone is one hundred and fifty-five thousand, five hundred dollars. He said this property actually ranged in value from a minimum of sixty thousand dollars to a maximum of two hundred and fifty thousand dollars. The Court examined his comparables and concluded that Mr. Beshear had used the lower range of value for comparables. Using the lower range that he used, including twenty-four thousand dollars for the value of the lot, Mr. Beshear would have this property valued at a hundred and seventy-nine thousand, five hundred dollars. The twenty-four thousand for the other land that goes with the house is from Ms. Satterfield.... But using those figures, the total value for Mr. Beshear would be a hundred and seventy-nine thousand, five hundred dollars. Since Mr. Bates paid a hundred and fifty-eight thousand, that would mean that the increase in value of this property is twenty-one thousand five hundred dollars.

Now, there's quite a difference between those two figures. There's either an increase in value of forty-eight thousand dollars or there's an increase in value of twenty-one thousand, five hundred dollars. And again, I want to most sincerely say that when I look at the comparables, I think the two agents, one used the higher value comparables and the other used the lower value comparables, and therefore the Court struck an average between them and calculated that the increase in value of this property, that is, the house, the barn, the shed, all of the land, is thirty-three thousand, one hundred and twenty-five dollars.

Each party now contends on appeal that the appreciation value given by their respective expert should stand. We disagree. It is well settled that the valuation of a marital asset is a fact driven inquiry. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App.1998). The value of

marital assets are to be determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App.1987). If there is conflicting evidence of value, the trial judge may assign a value within the range of values supported by evidence. *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App.1995). On appeal, the trial judge's factual findings are presumed correct unless the evidence preponderates against them. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App.1996).

In the case at bar, both parties presented competent evidence concerning the appreciation of the Distillery Road Property. However, Husband now asserts that the trial court abused its discretion in two ways: (1) by relying on Ms. Satterfield's appraisal and (2) in combining the value of the home with the adjoining lot in arriving at the appreciation figure. We disagree.

Husband specifically asserts that Ms. Satterfield's appraisal is erroneous because, *inter alia*, she "chose to use the entire county as the 'area' within which she could derive the value range and comparisons," "[s]he erroneously had the entire home on a continuous concrete foundation," "she made at least a $4,000.00 error in her comparable 1 with regard to her oversight of a four car carport," "she failed to adjust for the fact that the home and adjoining lot sit in a FEMA flood plain," "she did not rely on [a database of actual sales in the area over the preceding year." The trial judge was in a position to hear all of the testimony concerning how Ms. Satterfield derived her appreciation figure and the trial judge was also privy to the cross-examination of Ms. Satterfield. We note that the weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). The trial court did, in fact, note some of the perceived problems with Ms. Satterfield's appraisal in its ruling from the bench. The trial court also correctly found that Ms. Satterfield used the higher value comparables while Husband's expert used the lower value comparables. Given the fact that there was a large discrepancy between the appreciation values, the trial court did not err in assigning an appreciation value by taking an average. *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App.1995).

Concerning the trial court's combining of the vacant lot and the house in reaching an appreciation value, we find that this was not in error. As the trial court correctly notes, the house and lot were bought as one property, and maintained as one property. It was, therefore, proper for the lot and house to be considered together for purposes of calculating the appreciation value. Consequently, the evidence does not preponderate against the trial court's finding that the appreciation value of the Distillery Road Property was thirty-three thousand, one hundred and twenty-five dollars ($33,125.00).

**Whether Wife was entitled to two thirds of the appreciation
in the Distillery Road home and adjoining lot for her
contribution as a homemaker for three years.**

At the close of all proof, the trial court made the following, relevant, statements from the bench, concerning Ms. Bates' contribution as homemaker and the division of the appreciation in the Distillery Road Property:

> Ms. Bates testified that while she and Mr. Bates were having their relationship before marriage and after marriage, that she had worked, that after marriage Mr. Bates encouraged her to quit her job and stay home in order to save child-care expenses because Mr. Bates' daughter's mother was deceased. Ms. Bates told us that she feels like she raised Mr. Bates' daughter for the three years that she lived in Mr. Bates' home.... Mr. Bates testified he never paid day-care while married to Ms. Bates.
>
> \*　　　　　　　　　　\*　　　　　　　　　　\*
>
> ...Mr. Bates in his testimony confirmed that Ms. Bates did all of the wifely duties. And that's not only for him but it is also for his daughter and it is also a contribution to the maintenance of the home and allowed Mr. Bates to work from daylight to dark. In fact, Ms. Bates said Mr. Bates was gone all of the time, gone all of the time...
>
> \*　　　　　　　　　　\*　　　　　　　　　　\*
>
> Ms. Bates also testified that for her own daughter she received six hundred and forty-nine dollars a month in child support which she used for the Bates family expenses. And she testified that she did work on and off during the marriage but would desist work whenever Mr. Bates asked her to do so. So that work was not very substantial for a substantial time. The six hundred and forty-nine dollars and what pay she received Ms. Bates testified she cashed and then provided Mr. Bates with cash money with which to make her car payment.
>
> \*　　　　　　　　　　\*　　　　　　　　　　\*
>
> Now Ms. Bates told us that one of the items that she used her own cash monies for was family groceries. And I have gone through exhibit 13,[2] and there's not enough charged or written out of Mr. Bates' checking account, the joint checking account, collective exhibit 13, to pay groceries for a family of four. There's even a

---

[2] Exhibit 13 is a collection of bank statements and cancelled checks written on the parties' joint checking account.

month there where there's not a single grocery check or a check to [a company] that sells groceries. So the Court is satisfied that Ms. Bates' testimony to this effect, what she had that she either earned part-time when she worked, which was on and off, and that she received as child support, was utilized for the family's expenses in cash monies.

Therefore, the Court considers that Ms. Bates has an interest in the increase in value in the residence...

\*                                    \*                                    \*

I have already reviewed with you what Ms. Bates actually did as a housewife and mother, even to Mr. Bates' own minor child, and her financial contribution of her own child support and of her pay to the family expenses, and therefore the Court considers it equitable that Ms. Bates receive two thirds of the increase in value of this marital residence or twenty-two thousand, eighty-two dollars as her fair share, since that was her domain, Mr. Bates gone, and left solely for her to maintain most of the time, and apparently she did a good job.

T.C.A. § 36-4-121 (Supp. 2002) governs distribution of marital property and requires the following of the court:

©) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as

homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

\*                                  \*                                  \*

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

\*                                  \*                                  \*

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given *the same weight* if each party has fulfilled its role;

*Id*. (emphasis added).

T.C.A. § 36-4-121 (b)(1)(B) provides that "'marital property'" includes . . . any increase in value during the marriage of, property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation."

Ms. Bates' contribution to the preservation and appreciation of the property must be "real and significant." **Brown v. Brown**, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). We note that the division of marital property is not to be considered inequitable simply because each party did not receive a share of every piece of marital property, *see Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App.1994), or because it is not precisely equal. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996); and *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.1988). Dividing a marital estate is not a mechanical procedure but rather is guided by a consideration of the factors in T.C.A. § 36-4-121©). Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983); **Brown v. Brown**, 913 S.W.2d at 168, and appellate courts accord great weight to a trial judge's division of marital property. *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn.Ct.App.1996); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App.1973). Consequently, we ordinarily defer to the trial judge's decision regarding the division of property unless it is inconsistent with the factors in T.C.A. § 36-4-121©) or is not supported by a preponderance of the evidence. *See Kinard v. Kinard*, 986 S.W.2d 220, 230-31 (Tenn. Ct. App.1998); Brown v. Brown, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App.1989); and *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App.1983).

Notwithstanding Ms. Bates' income from part-time work or the child support payments she received, under T.C.A. § 36-4-121©)(5), her contribution as a homemaker would be given the same weight as Mr. Bates' contribution as wage earner. From the trial court's bench ruling, see *supra*, it appears that the court gave a great deal of weight to Ms. Bates' income from her part-time employment and to the six-hundred forty-nine dollars she receives monthly in child support in making its determination that Ms. Bates should receive two-thirds of the appreciation in the Distillery Road Property. We have reviewed the entire record in this case, and we find that Ms. Bates' part-time income was nominal at best. Concerning her employment during the marriage, Ms. Bates testified on direct examination, in relevant part, as follows:

> A [by Ms. Bates]. Well, shortly after we were married, he [Mr. Bates] asked me [Ms. Bates] to quit my job so I could stay home with our children because he did not want to have to pay child support.... So he asked me to quit my job and stay at home, and that's what I did. I stayed home for a couple of years.
>
> *                              *                              *
>
> Q. Now, tell the Judge a little bit about how much you worked during the time you were living with him.
>
> A. I worked periodically. I was having some female trouble. I worked as much as I could when I was well enough to work, aside from the times that he would tell me, quit your job and stay home with the kids. A lot of times I would get a job and get going good,

and then if his daughter needed somebody to stay with her and he felt like he couldn't do it, then he would tell me to quit my job....

On cross-examination, Ms. Bates testified about the specific jobs she held during the course of the marriage as follows:

Q.  In Christmas of 1998 you [Ms. Bates] were working as a receptionist for a beauty shop at Proffitt's.

A.  Yes.

Q.  Is that correct?

A.  Yes, sir.

Q.  And you were making–you don't remember how much you were making there.  You think it was eight dollars an hour.  Is that right?

A.  I do not remember.

Q.  You left there because it just wasn't enough money.  Correct?

A.  Right.

Q.  In March 1999 you went to work for Mark V[II] for a few months.  They're a freight transportation company.  Is that correct?

\*                                    \*                                    \*

A.  And I did work there [at Mark VII] for a few months, and I had to leave because of female problems.

\*                                    \*                                    \*

Q.  You were paid eight dollars an hour.  Your next job was you went to work after that for Dr. Hixon.

A.  That was just a temporary thing.  I filled in temporarily for Dr. Hixon when he had someone out.

Q.  And you worked through the summer of 1999 for eleven–or ten dollars an hour.

-11-

A. Not through the summer. Just whenever he called.

Although Ms. Bates held jobs periodically during the short marriage, it is clear from the evidence that her contribution as a wage earner was not substantial.

Turning to the child support payments that Ms. Bates' received, it appears the trial court tipped the scales in favor of Ms. Bates based, in part, upon this six-hundred forty-nine dollar "contribution" she made to the Bates family income. We believe that this added weight was given in error. Under T.C.A. § 36-5-101, the statute governing alimony and child support, we must assume that the court, which designated the payment of six-hundred forty nine dollars did so because, having considering all relevant facts and factors, the court concluded that this amount was reasonably necessary for the support and maintenance of Ms. Bates' daughter from a previous relationship. Although we appreciate the fungible nature of money and we do not doubt that some of these funds went toward necessities for family members other than Ms. Bates' daughter, we cannot go so far as to give Ms. Bates wage earner credit for monies that, in theory, went to the support of her daughter and not the family unit as a whole. Taking all of this into consideration, we find that the evidence does not support the trial court's finding that Ms. Bates is entitled to two-thirds of the appreciation in the Distillery Road Property. Rather, we find, under T.C.A. § 36-4-121©), that the parties made an equal contribution to the household, he as primary wage earner and she as homemaker. Since these two role are specifically given the same weight under T.C.A. § 36-4-121©)(5), we modify the Final Decree to award one-half of the appreciation in the Distillery Road Property to each party.

### Whether Husband was entitled to a set off in the amount of $12,000.00 for his contribution to Wife's automobile.

The Final Decree awards the 1997 Oldsmobile Achieva automobile to Wife and the 1997 GMC truck to Husband and makes each party responsible for the balance of any indebtedness owing on their respective vehicles. Husband asked the trial court for an offset of $11,734.72, which he alleged he had personally paid over the months for the Achieva. The trial court refused to grant this offset on the basis that, *inter alia*, some portion of the child support payments Wife received went toward the car payments. It is undisputed that Wife used the Achieva exclusively during the marriage in her role as homemaker. There is no doubt that this vehicle was used, in part, for the transportation of Ms. Bates' daughter, such that the payments and maintenance of the vehicle may partially be attributed to the child support payments.

As noted above, the division of marital property does not have to be equal in order to be equitable. *See Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996); and *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.1988). Since the evidence does not preponderate against the trial court's finding that Mr. Bates was not entitled to an offset on the Achieva automobile, we affirm. *See Kinard v. Kinard*, 986 S.W.2d 220, 230-31 (Tenn. Ct. App.1998); Brown v. Brown, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn. Ct. App.1989); and *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn. Ct. App.1983).

**Whether Husband should be required to pay one half of Wife's
credit card debt in her name when she refused to provide copies
of statements evidencing charges despite repeated requests.**

The Final Decree orders Mr. Bates to pay one-half of the credit card debts and medical bills, which were outlined in Exhibit 1, and totaled $3,808.04. In dividing the marital debt in half between the parties, the trial court made the following, relevant, statements:

> ...[T]he Court recalls the testimony of Ms. Bates that Mr. Bates wanted her to quit her regular employment so that she would maintain the parties' home and his daughter and so he would not have day-care expenses and agrees that Mr. Bates should pay one half of the debts reflected on exhibit 1. I calculate one half of those debts to be one thousand, nine hundred and two dollars and two cents.
>
> \*                               \*                               \*
>
> ...She [Ms. Bates] said she had some of that debt before they married but she couldn't pay those bills she had before they married when he asked her to quit her job after they married, and that's what she did do in response...they were originally her bills, but by requesting that she quit work, he [Mr. Bates] rendered her unable to pay them otherwise.

Husband now asserts that the trial court erred in finding that the debt was marital debt subject to equitable division. Specifically, Husband claims that he propounded discovery to Wife in order to get copies of the credit card statements, and that Wife refused to turn over those statements. Since he had no opportunity to examine these documents, which were solely in Wife's control, Husband asserts that he could not mount a defense to claims that Wife's credit card debt was marital debt. Although we acknowledge the fact that Wife admitted that she did not produce copies of the credit card statements, we note that Husband's recourse was to file a motion for order compelling discovery with the trial court pursuant to Tenn. R. Civ. P. 37.01. From a review of the record, we cannot find that the evidence preponderates against the trial court's finding that it was marital debt, which should be equitably divided one-half to each party.

**Whether Husband has the ability to pay
an award of attorney's fees.**

The trial court ordered Husband to pay $3,410.00 toward Wife's attorney's fees. Husband claims that he does not have the ability to pay these fees, to wit:

Q. Now she's [Ms. Bates] asking and you've [Mr. Bates] made a claim for attorneys' fees in this. Do you [Mr. Bates] have the funds to pay her attorneys' fees?

A. No, I do not.

Q. How is business right now?

A. It's not very good.

In making the award of attorney's fees, the trial court made the following, relevant, statements:

> Ms. Bates testified that she is currently living in public assisted housing. She's testified she has no money to pay a reasonable attorneys' fee. The Court is of the opinion that when a spouse is financially unable to pay a reasonable fee, they are entitled to have their attorneys' fee paid by the other party. To require Ms. Bates [to] pay her own fee with what the Court has awarded her would deplete the award of her fair share of the distribution of the marital properties...

It is well settled that an award of attorney fees constitutes alimony *in solido*. ***See Herrera v. Herrera***, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorneys' fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Kincaid v. Kincaid***, 912 S.W.2d 140, 144 (Tenn. Ct. App.1995); *see also* Rule 13(d) Tenn. R. App. P. As with any alimony award, in deciding whether to award attorney's fees as alimony *in solido*, the trial court should consider the relevant factors enumerated in T.C.A. § 36-5-101(d). A spouse with adequate property and income is not entitled to an award of alimony to pay attorneys' fees and expenses. ***Umstot v. Umstot***, 968 S.W.2d 819, 824 (Tenn. Ct. App.1997); ***Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn. Ct. App.1984). These awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. Ct. App.1992), or would be required to deplete his or her resources in order to pay these expenses. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App 1980). Thus, where the wife has demonstrated that she is financially unable to procure counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App.1980); ***Palmer v. Palmer***, 562 S.W.2d 833, 839 (Tenn. Ct. App.1977); ***Ligon v. Ligon***, 556 S.W.2d 763, 768 (Tenn. Ct. App.1977).

As noted, *supra*, the trial court found that Ms. Bates lacked sufficient funds to pay her reasonable attorney fees, and that to require her to do so would be to further deplete her already

-14-

sparse resources. Having reviewed the entire record in this case, we do not find that the evidence preponderates against the trial court's findings on this issue. We, therefore, affirm the order of the trial court, requiring Mr. Bates to pay $3,410.00 toward Ms. Bates' attorney fees.

### Whether the court erred in failing to award the Wife one-half interest in the business.

Wife asserts that she is entitled to a one-half interest in the landscaping business. In support of this assertion, Wife claims that she made substantial contributions to the business by: "preparing invoices and proposals," "[running] errands for the Husband," "[going] with the Husband to pick up equipment and trees, shrubs, bedding, [and] flowers." Wife's testimony concerning her participation in the business is, however, disputed in the record.

What is undisputed in the record is the fact that Mr. Bates sold his share of the Bates family business and used the proceeds of that transaction to open Bates Landscaping. The business was opened prior to his marriage to Ms. Bates and the majority of the equipment for the business was also procured prior to the marriage. Concerning the decision not to award any interest in the business to Ms. Bates, the trial court stated the finding:

> Mr. Bates has been in the landscaping business since he was seventeen years old, well, nursery and landscaping, working with the dirt and plants and so forth, and he was in this business when the parties married. Ms. Bates testified that she went with him to pick up stuff needed for the business. She testified that she worked some in his business, that she dropped off estimates and bills and even answered the phone at home Bates Landscaping. But she also admitted that Mr. Bates kept the business invoices, bills, and accounts separate from her and that he had an accountant.

> And we've heard from Ms. Batson, one of the accountants. She said that her business relationship with Mr. Bates began in 1995 before this marriage, that when Mr. Bates did marry Ms. Bates, that Mr. Bates suggested to her, Ms. Batson, that he wanted his wife to work with the accountant so he would not have to when he got home after a day's work. And apparently that's what he did after a day's work–he clearly did the business and she clearly did the home–because Ms. Batson said Ms. Bates had two appointments with her but didn't keep them, and that when they talked over the telephone, Ms. Bates said Mr. Bates actually did not want her involved in the business and she was not.

> Then there's the testimony of Mr. Reynolds who had worked for Mr. Bates for the last five years. He said he worked with Mr.

-15-

Bates from the beginning of the day until the end of the day and that he only saw Ms. Bates pulling weeds one time and she brought some equipment one time in the course of their marriage.

And Ms. Bates did say that when she went with her husband to do those kind of things, she did it because he was her husband and she as much wanted just to be with him.

So the Court cannot conclude from this that Ms. Bates has made any substantial nor financial contribution to Mr. Bates' business, and the Court would therefore award Mr. Bates all right, title, and interest of Bates Landscaping and its equipment, inventory, and accounts receivable to him without any payment to Ms. Bates for any interest therein.

The trial court found that the business was Mr. Bates' separate property and that Ms. Bates' contribution to the business was not substantial. Since the evidence does not preponderate against the trial court's findings, we affirm.

The Final Decree is modified to award each party $16,652.50, being one-half of the appreciation value in the Distillery Road Property to each party. As modified, the Final Decree is affirmed. Costs of this appeal are assessed one-half to Appellant, Joseph Lynn Bates, and his surety and one-half to Appellee, Lori Ann Bates.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.