IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 9, 2001 Session

## KAREN GARRETT HUMPHRIES v. DAVID ALISON HUMPHRIES

**Appeal from the Chancery Court for Washington County**
**No. 32330    Jean A. Stanley, Judge**

**FILED JULY 23, 2001**

**No. E2000-02912-COA-R3-CV**

In this divorce case, the trial court classified the parties' property, following which it divided the marital property, but declined to order spousal support. The husband appeals, arguing (1) that the trial court erred in classifying the increase in value of his separate property as marital property; (2) that the division of the marital property was not equitable; and (3) that the trial court erred in assigning, without classifying, the wife's credit card debt to the husband. By way of a separate issue, the wife argues that she is entitled to an award of alimony. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

David S. Haynes, Bristol, Tennessee, for the appellant, David Alison Humphries.

Robert D. Arnold, Johnson City, Tennessee, for the appellee, Karen Garrett Humphries.

**OPINION**

I. *Overview*

Karen Garrett Humphries ("Wife") and David Alison Humphries ("Husband") were married on October 22, 1994. It was Wife's second marriage and Husband's third. No children were born to their union; both parties had children from their prior marriages. At the time of trial, Wife's two children were 15 and 13 years old, respectively; Husband's children were adults. Wife was then 46 years old, and Husband was 45.

At the time of the parties' marriage, Wife was self-employed, working part-time as an interior designer and earning approximately $9,000 to $10,000 a year. She also received child support from her former husband. Husband owned a one-half interest in Smoky Mountain

Freightliner, LLC, and Smoky Mountain Leasing, LLC, businesses engaged in the sale and leasing of tractor trailer rigs. Husband also owned a one-half interest in a tract of commercial property located at the intersection of Interstate Highways 81 and 181 near Bristol.[1] In addition to his businesses, Husband owned a four-unit apartment building from which he received regular income. The trial court found that at the time of the marriage, Wife had a net worth of $161,248, and Husband had a net worth of $237,500.

After their marriage, Husband moved into Wife's home with her and her two minor children. Eight months later, Wife sold her home for $126,000. She used $32,000 of these proceeds to pay the outstanding mortgage on Husband's apartment building; $30,000 to purchase land for, and $48,000 to begin the construction of, a new home for the parties; and $16,000, the balance of the proceeds, to purchase stock. All of the assets acquired with these proceeds were placed in the parties' joint names.

Following the marriage, Wife continued to work part-time as an interior designer. In addition to her part-time employment, she managed Husband's apartments. Wife testified that for the first 15 months of the marriage, she paid all of the household expenses out of her funds.

Jack A. Bonner, Jr., a certified public accountant who had worked for Husband's businesses, testified that, at the time of the marriage, the businesses were "barely making it...they had a lot of debt...[a]nd at that point it was really a guesstimation as to – as to [whether] the entity was going to survive or not." In 1996, Husband's businesses relocated to his commercial property located at the intersection of Interstate Highways 81 and 181, and a new facility was constructed. Wife worked on the interior design of most of the facility, including the sales office, reception room, conference room, personal offices, kitchen, floorings and walls of the parts department, and the truckers' lounge. She received no monetary compensation for this work.

Following the relocation to the new site, Smoky Mountain Freightliner, LLC, experienced a meteoric increase in sales. By 1998, the company had gross receipts of $26,193,202 and a net income of $1,163,265. Husband's other ventures also enjoyed increased success. Husband's taxable income increased significantly as a result of the success of his businesses. While Wife's income remained substantially the same during the marriage, Husband's increased income caused the parties' adjusted gross income to rise as follows:

---

[1]Eventually this property became the primary asset of a third business, Smoky Mountain Properties, LLC, in which Husband owned a one-half interest.

|       | Year | Adjusted Gross Income |
|-------|------|-----------------------|
|       | 1994 | $ 64,616              |
|       | 1995 | 160,036               |
|       | 1996 | 28,235                |
|       | 1997 | 515,380               |
|       | 1998 | 755,637               |

How much of this income Husband actually "brought home" is unclear. Husband's CPA testified that the income reported by Husband was "pass-through" income from the companies, and that the bulk of the income reported by Husband was in fact "recycled" and put back into the businesses.

The parties separated on February 1, 1998. Wife filed for divorce on July 20, 1998. At the bench trial that followed, it was stipulated that the valuation date for the parties' assets would be April 15, 1999. One of the major issues at the first trial of this case was the validity of the parties' antenuptial agreement. Also in contention was the increase in value of Husband's businesses during the marriage. Each party submitted appraisals of the value of Husband's businesses, both at the time of the marriage and as of the agreed valuation date of April 15, 1999.

The trial court, upon finding that the parties' antenuptial agreement was valid, did not award Wife a portion of the increase in value of Husband's businesses during the marriage. The trial court did award Wife the marital residence and ordered Husband to pay the outstanding mortgage on that property. Wife was further awarded rehabilitative alimony of $800 per month for four years.

The trial court's judgment following the first trial was appealed to this Court. We found that the antenuptial agreement was not valid, and, consequently, remanded this matter back to the trial court for further consideration of the division of marital property and the award of alimony. *See Humphries v. Humphries,* C/A No. E1999-02694-R3-CV, 2000 WL 979984 (Tenn. Ct. App. E.S., filed July 18, 2000).

On remand, the trial court valued Husband's 50% interest in the following businesses:

| Asset | Value at Marriage | Current Value |
|-------|-------------------|---------------|
| Smoky Mountain Freightliner, LLC | $75,000 | $1,398,000 |
| Smoky Mountain Properties, LLC | 5,000 | 333,100 |
| Smoky Mountain Leasing, LLC | 15,000 | 25,100 |

Citing Wife's contributions to the marriage as a wife and homemaker, her management of Husband's apartment building, and her work in connection with the interior design of the new Freightliner facility, the trial court found the increase in value of Husband's business interests to be marital property. However, noting that Wife's contributions to Husband's businesses were "not as direct

or as great as [Husband's] who is employed there and who owned them before the marriage," the trial court found that Wife was entitled to only 25% of the increase in value of Husband's 50% interest in the subject businesses. The trial court awarded Wife the marital residence, subject to the mortgage, and furnishings, an Acura automobile, one-half of the parties' stocks and 401K, a $2,000 bank account, and a cash payment of $357,800. Husband was awarded his interest in the businesses, one-half of the parties' stocks and 401K, a $10,000 bank account, a Lexus automobile, and the apartment building. Husband was ordered to pay "all credit card indebtedness arising during the marriage and all debt on his separate property." Given the large monetary award to Wife, the trial court found that an award of alimony would not be appropriate. The court also decreed that Husband would be allowed a credit against his lump sum obligation for alimony and mortgage payments made to Wife between the dates of the two divorce hearings.[2] This appeal followed.

## II. *Standard of Review*

In this non-jury case, our review is *de novo*; however, the record comes to us accompanied by a presumption of correctness as to the trial court's factual findings, a presumption that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. **Jahn v. Jahn,** 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

## III. *General Principles*

Before addressing the issues raised by the parties, we will review the general principles regarding the classification and division of property in a divorce case. Tennessee recognizes two distinct classes of property: (1) "marital property," as defined in T.C.A. § 36-4-121(b)(1) (Supp. 2000); and (2) "separate property," as defined in T.C.A. § 36-4-121(b)(2) (Supp. 2000). The distinction is important because, in an action for divorce, only marital property is divided between the parties. *See* T.C.A. § 36-4-121(a)(1) (Supp. 2000). Implicit in the statute is the understanding that a party's separate property is not to be divided. **Brock v. Brock,** 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996).

Generally speaking, property that is acquired during a marriage by either or both spouses and still owned by either or both spouses when the divorce is granted is classified as marital property and is thus subject to equitable division. T.C.A. § 36-4-121(b)(1). However, property acquired by a spouse by gift, bequest, devise or descent, even if acquired during the marriage, is separate property and not subject to division. T.C.A. § 36-4-121(b)(2)(D).

Property may be equitably divided and distributed between the parties once it is properly classified as marital. *See* T.C.A. § 36-4-121(a)(1). "Trial courts have wide latitude in fashioning

---

[2]In her brief, Wife indicates that since the original divorce judgment, Husband had paid a total of $12,000 in alimony and $24,000 in mortgage payments.

an equitable division of marital property." **Brown v. Brown,** 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). This must be done with reference to the statutory factors found in T.C.A. § 36-4-121(c) (Supp. 2000). Marital fault cannot be considered. T.C.A. § 36-4-121(a)(1).

"[A]n equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." **Batson v. Batson,** 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). It is not necessary that both parties receive a share of each piece of property. **Thompson v. Thompson,** 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). It is the overall division that must be equitable. **Id**. We are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. *See* **Brown,** 913 S.W.2d at 168.

## IV. *Classification and Division of Marital Property*

The trial court divided and distributed the parties' marital property as follows:

| | Net Value | Awarded to Wife | Awarded to Husband |
|---|---|---|---|
| Smoky Mountain Freightliner – (Increase in value of 50% interest) | $1,323,000 | | $1,323,000 |
| Smoky Mountain Properties – (Increase in value of 50% interest) | 328,100 | | 328,100 |
| Smoky Mountain Leasing – (Increase in value of 50% interest) | 10,100 | | 10,100 |
| Marital Residence | 150,000[3] | $150,000 | |
| Apartment Building | 32,000 | | 32,000 |
| Furniture & Furnishings | 10,000 | 10,000 | |
| Lexus Automobile | 10,000 | | 10,000 |
| Acura Automobile | 5,000 | 5,000 | |
| Duke Ingram Stock | 11,250 | 5,625 | 5,625 |
| Wheat First Stock | 15,000 | 7,500 | 7,500 |
| Bank Accounts | 12,000 | 2,000 | 10,000 |
| 401K | 23,000 | 11,500 | 11,500 |
| Cash Payment to Wife | | 357,800 | <357,800> |
| Total | $1,929,450 | $549,425 | $1,380,025 |

_____

[3]The marital residence is valued at $300,000. There is an outstanding indebtedness against it of $150,000.

A.

Husband first argues that the trial court erred in classifying the increase in value of his business interests as marital property. Wife counters that the increase was properly classified as marital, but contends that she should have received more than 25% of that increase.

T.C.A. § 36-4-121(b) provides that marital property includes "any increase in value during the marriage of, property determined to be separate property...if each party substantially contributed to its preservation and appreciation...." T.C.A. § 36-4-121(b)(1)(B). To be considered substantial, a spouse's contribution to the preservation and appreciation of the property must be "real and significant." **Brown v. Brown,** 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Such contributions "need not be monetarily commensurate with the appreciation in the property's value during the marriage." **Mahaffey v. Mahaffey,** 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989).

Husband contends that Wife's contributions, if any, to the preservation and appreciation of his separate property ceased at the time the parties separated in February, 1998; therefore, so the argument goes, the increase in value following the parties' separation cannot be considered marital property. Alternatively, Husband argues that the sole cause of the increase in value of his business interests was the decision to relocate them adjacent to the interstate.

We find Husband's arguments to be without merit. The evidence does not preponderate against the trial court's determination that Wife made substantial contributions to the preservation and appreciation of Husband's businesses. Wife made significant financial contributions during the first 15 months of the marriage; she paid the parties' household expenses and contributed to the marriage the bulk of her separate estate, *i.e.,* the proceeds from the sale of her home. In addition, during the course of the marriage, she managed Husband's apartments and decorated the interior of the new Freightliner facility. We find there is ample evidence to support the trial court's finding that Wife made substantial contributions to the preservation and appreciation of Husband's business interests. Although the decision to relocate the businesses undoubtedly had a very positive impact upon their financial condition, we cannot agree with Husband that the *sole* cause of the increase in value of his businesses was the relocation, especially in light of the evidence of Wife's direct and indirect contributions.

Once it has been determined that a spouse has made a substantial contribution to the preservation and appreciation of the other spouse's separate property, *all* of the increase in value during the marriage is considered marital property, even though other factors may have contributed to the increase. *See* **Ellis v. Ellis,** 748 S.W.2d 424, 426 (Tenn. 1988); **Denton v. Denton,** 33 S.W.3d 229, 237 (Tenn. Ct. App. 2000), *perm. app. denied* December 4, 2000. Thus, although Wife's contributions may in fact have ceased after the parties' separation, and other factors may have played a significant role, the *entire* increase in the value of Husband's business interests during the marriage

was properly classified by the trial court as marital property.[4] The arguments made by Husband are more directly related to the *division* issue rather than the *classification* issue. The trial court recognized this in splitting the increase in value 75% to Husband and 25% to Wife.

B.

Husband next argues that the division of the marital property was not equitable in light of this Court's decision in ***Batson v. Batson,*** 769 S.W.2d 849 (Tenn. Ct. App. 1988).

Like the parties in the instant case, the parties in ***Batson*** had a relatively brief marriage. In dividing the Batsons' property, this Court stated as follows:

> In cases involving a marriage of relatively short duration, it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place.
>
> When relatively short marriages are involved, each spouse's contributions to the accumulation of assets during the marriage is an important factor. When a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property are minimal at best.

***Id.*** at 859 (citations omitted). This Court noted several factors that militated in favor of an unequal property distribution between the Batsons, including the following:

> At the time of the marriage, Dr. Batson's net worth was more than ten times larger than Mrs. Batson's net worth, and his annual income was nine times larger.
>
> The parties were married for only a little more than five years prior to their separation in June, 1985.
>
> The Batsons supported themselves during the marriage primarily on Dr. Batson's income. Mrs. Batson's financial contributions were comparatively small either because she was not working or because

---

[4]In the argument section of his brief relating to the issues just discussed, Husband contends that the appraisal of Smoky Mountain Freightliner, LLC, submitted by Wife contains "serious flaws" and is not competent evidence of that company's value. Suffice it to say that the evidence does not preponderate against the trial court's judgment with respect to the subject business.

> she was using her income to support and educate the children from her second marriage.

> \*      \*      \*

> Mrs. Batson's non-monetary contributions to the marriage are best considered as part of the award for separate maintenance and support.

*Id.* at 859-60. The Court in **Batson** determined that the marital property should not be divided equally and that the Batsons "should, in large measure, be restored to their pre-marriage financial condition." *Id.* at 859. Accordingly, Dr. Batson was awarded $397,404 in marital property, along with his separate property of $848,265, and Mrs. Batson was awarded $21,165 in marital property, along with her separate property of $133,000. The Court noted this division "leaves the parties with approximately the same net worth they had prior to the marriage and preserves, in large measure, the relationship between their respective net worths that existed [at the time of the marriage]." *Id.* at 861.

In the instant case, we find and hold that the trial court correctly divided and distributed the marital property. Unlike in **Batson**, where at the time of the marriage the husband had a net worth and income some ten times greater than that of the wife, the parties in the instant case had relatively similar net worths. And while Husband's income was significantly greater than Wife's at the time of the marriage, we note that early on in the marriage, Wife made significant financial contributions to the marriage out of her separate property. Thus, it is evident that the parties made substantially equal financial contributions, at least at the onset of the marriage. Due to the efforts of both parties, as we have previously discussed, the value of Husband's business interests increased significantly during the marriage. These facts lead us to conclude that an extremely unequal division of marital property, as was decreed in the **Batson** case, is not warranted in the case now before us. Because of the relatively short duration of the marriage, however, and the greater contributions by Husband to the bulk of the marital estate, *i.e.*, the increase in value of his separate business interests, we find that the overall property division in this case is equitable.

C.

Husband argues that the trial court erred in failing to classifying Wife's credit card debt of $10,000 as her separate obligation.

Although the trial court did not specifically classify the $10,000 credit card debt as marital, it was implicitly classified as such as Husband was required to pay "all credit card indebtedness arising during the marriage." We find no error in the trial court's classification of this obligation as a marital debt. "Marital debts are those debts incurred during the marriage for the joint benefit of the parties, or those directly traceable to the acquisition of marital property." ***Mondelli v. Howard,*** 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989) (citation omitted). In dividing marital debts, courts should consider the following factors: (1) the debt's purpose; (2) which party incurred the debt; (3)

which party benefitted from incurring the debt; and (4) which party is best able to repay the debt. *Id.*

Wife testified that, while approximately twenty percent of this credit card debt was related to her interior design business, the majority of the debt was related to expenses for her children, who resided with the parties during the marriage. Considering the fact that Wife used her income and separate property for the benefit of this marriage, we do not find that the evidence preponderates against a finding that Husband should be burdened with Wife's credit card debt incurred during the marriage.

## V. *Alimony*

By way of a separate issue, Wife argues that the trial court erred in not awarding her alimony. We disagree.

A trial court has broad discretion in determining whether and to what extent an award of alimony is appropriate. *See* T.C.A. § 36-5-101(a)(1) (Supp. 2000); *see also* **Loyd v. Loyd,** 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). In making an alimony determination, a court should be guided by T.C.A. § 36-5-101, particularly the provisions of T.C.A. § 36-5-101(d)(1)(A)-(L) (Supp. 2000). The "real need" of the requesting spouse "is the single most important factor." **Cranford v. Cranford,** 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." **Id.**

The trial court did not abuse its discretion in refusing to award Wife alimony. At the time of trial, Wife was 46 years old and in good health. She was employed part-time as an interior designer, with an average income of $9,000 to $10,000 per year. In addition, she was receiving $1,800 per month in child support from her former husband. Wife submitted an income and expense statement to the trial court showing that her expenses are $4,132 per month, including a $1,600 house payment. We find that the $357,800 cash payment awarded to Wife can be utilized, at least in substantial part, to spin off income to supplement her income in order to satisfy her needs. We affirm the trial court's judgment as to this issue.

## VI. *Conclusion*

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, David Alison Humphries.

_____
CHARLES D. SUSANO, JR., JUDGE

-10-