IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 2, 2003 Session

**BETTY J. BRYANT v. ROY C. BRYANT**

**Appeal from the Chancery Court for Claiborne County**
**No. 13,268     John McAfee, Judge**

**FILED SEPTEMBER 23, 2003**

**No. E2002-02201-COA-R3-CV**

---

In this divorce case, the trial court dissolved a marriage of over 36 years; divided the parties' marital property; and denied the request of Betty J. Bryant ("Wife") for attorney's fees. Wife appeals, arguing that the division of marital property is not equitable. Her argument is predicated primarily upon the assertion that her spouse, Roy C. Bryant ("Husband"), dissipated the marital assets as a result of his gambling activities. In addition, Wife contends that the trial court erred in refusing to award her attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. HOUSTON M. GODDARD, P.J., not participating.

Johnny V. Dunaway, LaFollette, Tennessee, for the appellant, Betty J. Bryant.

David H. Stanifer, Tazewell, Tennessee, for the appellee, Roy C. Bryant.

**OPINION**

I. *Background*

Husband and Wife were married on December 25, 1965. There were no children born to their union. Wife obtained her undergraduate degree shortly following the parties' marriage. After living and working in Michigan for four years, Husband and Wife returned to Tennessee, where Husband completed his undergraduate education. Both parties went on to obtain Masters degrees, and both have had extensive careers in education. Wife taught in the Kentucky school system until

she retired in 1998; Husband has been employed with the Claiborne County school system since 1973, first as a teacher and later as an administrator. At trial, Husband stated that he planned to retire from his position as a school principal in June, 2003.

Wife initially filed for divorce in 1980, after learning that Husband was having an affair. The parties later reconciled. Twenty-one years later, Wife again filed for divorce, alleging, *inter alia*, cruel and inhuman treatment, as well as adultery. Husband answered, denying Wife's allegations. He filed a counterclaim for divorce.

A divorce hearing was held on August 26 and 27, 2002. At trial, Wife testified that Husband gambled extensively. She claimed that Husband hosted weekly poker games at the parties' home for approximately ten years; that Husband regularly gambled on sporting events and utilized the services of several bookmakers; and that he gambled while on several vacations. Wife argued that Husband's gambling habit resulted in the dissipation of thousands of dollars of the marital estate.

Husband admitted that he had gambled throughout the marriage, but stated that he was merely a recreational poker player. He claimed that, during the time the poker games were held in the parties' home, Wife never complained and that she provided food and drink for Husband and his friends. Husband stated that he and Wife hosted numerous Super Bowl parties, at which Wife, along with the other guests, placed bets on the score of the game. Husband also testified that, when the parties took a vacation to Aruba, Wife played the slot machines and won money in doing so.

At the conclusion of the trial, the court ruled from the bench, granting Wife a divorce on the ground of adultery. The trial court divided the parties' marital property as follows:

|  | | Awarded To | |
| Assets/Debts | Value | Wife | Husband |
| --- | --- | --- | --- |
| Marital Residence | $213,000 | $213,000 | |
| Payment to Husband re: his interest in Marital Residence | | <93,152> | $ 93,152 |
| 1/4 Interest in Long Farm | 13,000 | | 13,000 |
| 1/6 Interest in Ramsey Farm | 18,800 | | 18,800 |
| Wife's Pension | 70,000 | 70,000 | |
| Husband's Retirement | 47,000 | | 47,000 |
| Household Furnishings | 7,000 | 7,000 | |
| Other Household Furnishings[1] | 2,000 | | 2,000 |
| 1994 Jeep Automobile | 6,000 | 6,000 | |
| 1991 Chevrolet Automobile | 3,500 | | 3,500 |
| Jewelry | 3,250 | 3,250 | |
| Certificates of Deposit | 15,000 | 15,000 | |
| Checking Account | 8,500 | 8,500 | |
| Mutual Funds | 11,000 | 11,000 | |
| 1/2 Interest in Two Boats | 1,100 | | 1,100 |
| 1/3 Interest in Cattle | 2,000 | | 2,000 |
| Gun Collection | 16,300 | | 16,300 |
| Commercial Bank Debt | <13,000> | | <13,000> |
| First Century Bank Debt | < 3,000> | | < 3,000> |
| Farm Debt | < 4,000> | | < 4,000> |
| Total | $417,450 | $240,598 | $176,852 |

In making this 58%/42%[2] split, the trial court made the following statements:

> [Y]ou settle in on [Tenn. Code Ann. § 36-4-121(c)(5)], the contribution of each party to acquiring the property, preserving the property, the appreciation in the property – depreciation and dissipation of marital property, and there's a difference. . . .
>
> * * *
>
> [W]e've got what I characterize as [Wife] – and I think, [Wife], you would agree with this, that she sort of kept the house. I mean, she

---

[1] These furnishings include a pool table, mounted deer heads and fish, a small bedroom suite, a 78 RPM record collection, a grandfather clock, clothing and tools.

[2] In its opinion, the trial court stated that it was fashioning a "fifty-five/forty-five split;" however, this does not take into account the debt assessed to Husband. Factoring in Husband's $20,000 debt, the division of the estate is 58% to Wife and 42% to Husband.

sort of cleaned it and she took care of it. She enjoyed it. I would imagine that's probably a great deal of pride for you, that home. . . . So regardless if you were anticipating later to get a greater reward in a divorce proceeding is why you contributed more, you contributed more because you loved your husband, and you contributed more because you had a lot of honor and pride in that home, and it is a very beautiful home. And I know [Husband] would acknowledge that. I think that he's appreciated over the years being able to come home to a clean home, to a nice home, to a loving wife, and that's worth something. . . .

It's clear from the record that [Husband] has gambled. Now, I'm not going to sit here and say that he's got a problem or it's recreational, whatever it is, and he's had some bad days and he's had some good days. I'm sure there's days that he's made some money, and I'm sure there's days he didn't make any money. He's testified that he's had to borrow money to pay people because he's lost some bets, and that's just the way it is.

Would you have had greater assets if he had not gambled? Perhaps. . . . And you look at the word dissipated and the terminology it's used in [Tenn. Code Ann. § 36-4-121-(5)], it's where people waste the estate. It's where they just all of a sudden start giving money away because they're mad at the other spouse and they don't want the other spouse to have it, and I think that's the general notion that the General Assembly meant in reference to that. Now, if someone hauls off with a fifty thousand dollar CD that you all have worked mutually together to build up and he just goes and blows it in Las Vegas, clearly it's dissipating and that should be counted against him.

\* \* \*

But I asked the question a moment ago and I asked you yesterday on the witness stand about the relationship that you all had. I mean, that's just the way you all lived. Whether that's right or wrong, you were happy with that. There was a time that you finally got to the point and said, "I've had enough of this, and I'm not taking this anymore, and I'm going to file for a divorce." The marriage was probably over a long time ago. You just sort of stuck it out.

\* \* \*

-4-

The Court finds that [the division of marital assets is] an equitable distribution based on the fact of dissipation of monies, and there are thousands of dollars here. And I think [Husband] has acknowledged that, . . . . But the Court believes that to be equitable taking into consideration her contributions toward this home and what she did after the acquiring of the mortgage and her upkeep of this property, that she should be – and that's the reason why the Court has deviated somewhat from the norm, which is generally fifty/fifty.

The trial court then declined to award Wife her requested attorney's fees. The court's bench ruling was incorporated by reference into the final order, entered September 12, 2002. From this order, Wife appeals.

## II. *Standard of Review*

Our review of this non-jury case is *de novo* upon the record developed below with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. ***Brumit v. Brumit***, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## III. *Property Division*

Wife first argues that the trial court erred in its division of the parties' marital property. Specifically, Wife contends that the trial court failed to appropriately adjust the parties' interests in the marital estate in view of Husband's dissipation of that estate.

Property must be equitably divided and distributed between the parties once the property is properly classified as marital. *See* Tenn. Code Ann. § 36-4-121(a)(1) (Supp. 2002). "Trial courts have wide latitude in fashioning an equitable division of marital property." ***Brown v. Brown***, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). Such a division is to be achieved upon consideration of the statutory factors found in Tenn. Code Ann. § 36-4-121(c) (Supp. 2002).

"[A]n equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." ***Batson v. Batson***, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. ***Brown***, 913 S.W.2d at 168.

Tenn. Code Ann. § 36-4-121 provides, in pertinent part, as follows:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

In the instant case, the trial court awarded 58% of the marital estate to Wife and the remainder to Husband. The evidence does not preponderate against this division. Our review of the trial court's remarks from the bench, as incorporated into its final judgment, clearly indicates that the court considered Tenn. Code Ann. § 36-4-121(c)(5) to be "the most relevant factor" in dividing the parties' marital property. *See Batson*, 769 S.W.2d at 859. The trial court referred to Wife's contributions to the home and the parties' property, as well as Husband's dissipation of marital assets through gambling, in reaching its conclusion that Wife was entitled to 58% of the marital estate.

Wife argues strenuously that the 58% award is too low – inequitable – in light of Husband's "dissipation of the marital estate through gambling." In support of her position, Wife cites us to several cases in which a party's gambling losses were taken into consideration by the court in fashioning a division of marital property. *See Deneau v. Deneau*, No. M2000-00238-COA-R3-CV, 2001 WL 177063 (Tenn. Ct. App. M.S., filed February 23, 2001) (upholding trial court's division of marital property where proof of Wife's gambling away thousands of dollars constituted dissipation of marital property); *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992) (upholding trial court's award of all remaining marital property to Wife, where evidence showed that Husband had dissipated over $450,000 in assets from the time the divorce was filed until the time of trial); *Ford v. Ford*, 1989 WL 51510 (Tenn. Ct. App. W.S., filed May 18, 1989) (modifying the trial court's award of marital property to take into account evidence that Husband, after the parties separated, dissipated $220,000 of marital assets, allegedly while gambling in Las Vegas).

Wife's reliance on these cases is misplaced. Both the *Ford* and *Storey* cases involve substantial and clearly established dissipation of assets after the parties had separated or after divorce proceedings had been initiated. As the trial court stated, these are examples of people "wast[ing] the estate" and "giving money away because they're mad at the other spouse and they don't want the other spouse to have it." Further, in *Ford*, *Storey*, and *Deneau*, there is evidence of a fairly specific amount of money lost through gambling; we have no such proof in the instant case. Here, the plaintiff was unable to quantify in a meaningful way Husband's net losses. Husband, on the other hand, denied losing a substantial sum over the life of the marriage. Certainly, there is no proof that Husband gambled away hundreds of thousands of dollars, as did the husbands in *Ford* and *Storey*. Moreover, the proof at trial showed that Husband had gambled throughout the marriage; there is absolutely no indication that Husband began gambling significantly more after the divorce proceeding was initiated. As the trial court stated, "that's just the way you all lived." When the facts of this case – including Husband's gambling – are considered in light of Tenn. Code Ann. § 36-4-121(c)(5), we do not find that the evidence preponderates against the trial court's exercise of its discretionary function in dividing the marital assets.

Wife relies upon one case that, in our view, actually *supports* the division of marital property by the trial court. In *Terrell v. Terrell*, No. 02A01-9610-CV-00254, 1997 WL 576536 (Tenn. Ct. App. W.S., filed September 18, 1997), the wife testified at trial that her husband had gambled significantly throughout the marriage. The trial court awarded approximately 58% of the marital estate to the wife, finding that the husband had "'dissipated and wasted thousands of dollars gambling.'" *Id.*, at *2 (quoting the trial court's opinion). In upholding this disproportionate division to the wife, we agreed with the trial court's finding with respect to the husband's gambling. *Id.*, at *5. Partially based on that evidence, this court "affirm[ed] the trial court's decision to award the [w]ife a greater share of the marital estate than the [h]usband." *Id.*

The facts in the instant case are quite similar to those in *Terrell*, and the percentage of marital assets awarded to Wife in the instant case is basically identical to that awarded to the wife in *Terrell*.

Based on all of the above, we find no error in the trial court's decision to award Wife 58% of the marital estate, and, consequently, we decline to disturb that award.

## IV. *Attorney's Fees*

Wife contends that the trial court erred in refusing to award her attorney's fees. We disagree.

The question of whether to award attorney's fees is within the sound discretion of the trial court, and an appellate court will not disturb a trial court's award unless the evidence preponderates against it. ***Barnhill v. Barnhill***, 826 S.W.2d 443, 456 (Tenn. Ct. App. 1991). A trial court may appropriately award attorney's fees "when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or would be required to deplete his or her resources in order to pay these expenses." ***Smith v. Smith***, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1997) (citing ***Brown v. Brown***, 913 S.W.2d 163 (Tenn. Ct. App. 1994)).

We find that the evidence does not preponderate against the trial court's decision to refuse Wife's request for attorney's fees. The trial court awarded Wife $34,500 in liquid assets. Accordingly, we hold Wife has "sufficient funds" with which to pay her own attorney. This being the case, we find no abuse of discretion in the trial court's decision not to award Wife any attorney's fees.

## V. *Conclusion*

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Betty J. Bryant.

_____
CHARLES D. SUSANO, JR., JUDGE