IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 24, 2012 Session

## TORRIE SCHNEIDER LONGANACRE v. MATTHEW ROBERT LONGANACRE

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI10490    Laurence M. McMillan, Chancellor**

_____

**No. M2012-00161-COA-R3-CV - Filed January 16, 2013**

_____

Husband appeals the order granting Wife a legal separation and alimony in futuro. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court. PATRICIA J. COTTRELL, P. J., M. S., filed a dissenting opinion. FRANK G. CLEMENT, JR., J., filed a concurring opinion.

Gregory D. Smith, Clarksville, Tennessee, for the Appellant, Matthew Robert Longanacre.

Donald N. Capparella and Jason Gichner, Nashville, Tennessee; and Elizabeth D. Rankin, Clarksville, Tennessee, for the Appellee, Torrie Schneider Longanacre.

### OPINION

### I. Facts and Procedural History

Matthew Longanacre ("Husband") and Torrie Longanacre ("Wife") married on December 7, 2002. No children were born of the marriage. In March 2009, Wife fell down the stairs at the couple's home and struck her head. Wife sustained a traumatic brain injury and, as a result, has difficulty reading, writing, and completing tasks, and suffers debilitating migraine headaches and seizures.

Husband, a soldier with the United States Military, deployed overseas in March 2010. Wife continued to live in the couple's home in Clarksville, Tennessee, for three months

before moving to Florida to live with her parents.[1]  On October 28, 2010, while still deployed, Husband sent an email to Wife suggesting that they separate.  On December 15, Wife filed for a petition seeking a legal separation on the grounds of irreconcilable differences, cruel and inhuman treatment, and adultery.  On January 5, 2011, Husband answered and counter-sued for an absolute divorce on the grounds of irreconcilable differences and inappropriate marital conduct.  Wife answered Husband's counterclaim denying that Husband had grounds for divorce.

The matter was heard on November 8 and 9, 2011; the court issued its Memorandum Opinion on November 22, and a Final Decree on December 19.  In the decree the court dismissed Husband's counterclaim for divorce, granted Wife's complaint for legal separation, distributed the marital estate, awarded Wife alimony *in solido* and, after finding that Wife was "not capable of rehabilitation" due to her brain injury, awarded alimony *in futuro* in the amount of $1,250.00 per month.

Husband filed a timely appeal in which he raises the following issues:

I.     The Trial Court erred in denying Defendant an absolute divorce on the ground of Inappropriate Marital Conduct.
II.    The Trial Court erred in awarding permanent alimony.

## II. Discussion

In our review of a divorce proceeding, the trial court's findings of fact "are presumed to be correct unless the evidence preponderates otherwise." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744 (Tenn. 2002) (citing Tenn. R. App. P. 13(d)).  Questions of law are reviewed *de novo* without the presumption of correctness.  *See id.* at 745 (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)).  Mixed questions of law and fact are reviewed *de novo* with no presumption of correctness, with the appellate court having "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal."  *Id.* at 745 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

### A. Legal Separation

In the final decree, the court held that "wife did not commit acts during this marriage that rise to the level of inappropriate marital conduct" and that, accordingly, Husband failed

---

[1] Wife testified that she was unable to care for herself alone because she would lock herself out of the house, was not able to drive, and could not get groceries.

to carry his burden of proof. The court held that Wife proved grounds for legal separation as provided by Tenn. Code Ann. § 36-4-102 and proceeded to divide the marital property and to make the awards of alimony.

Husband contends that the trial court erred in dismissing his complaint and in granting Wife a legal separation. He asserts that the court should have awarded him an absolute divorce because Wife committed inappropriate marital conduct through her "reckless money management," physical assaults of Husband, "extreme jealousy," and alienation of Husband from his other family members.

Tenn. Code Ann. § 36-4-101(a)(11) defines inappropriate marital conduct as:

> The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper, which may also be referred to in pleadings as inappropriate marital conduct[.]

In *Chaffin v. Ellis*, this Court succinctly summarized the standard for a court to determine inappropriate marital conduct as follows:

> Inappropriate marital conduct can be found when "[t]he husband or the wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper . . . ." Tenn. Code Ann. § 36-4-101(11) (2001); *see Eldridge v. Eldridge*, 137 S.W.3d 1, 23–24 (Tenn. Ct. App. 2002). Thus, inappropriate marital conduct is established when "either or both of the parties [have] engaged in a course of conduct which (1) caused pain, anguish or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.'" *Eldridge*, 137 S.W.3d at 24 (quoting *Earls v. Earls*, 42 S.W.3d 877, 892 (Tenn. Ct. App. 2000) (Cottrell, J., concurring)).

*Chaffin v. Ellis*, 211 S.W.3d 264, 289 (Tenn. Ct. App. 2006).

Husband's testimony with respect to Wife's "reckless money management" was that Wife was continuing to "charge money on the credit card" as he was trying to pay it off, that Wife requested that they to incur more debt to finance her "cosmetic surgery," and that Wife was not on "the same sheet of music" with regard to his effort to pay off the parties' debt. Wife testified that the charges on the credit card largely related to travel from Florida to

Tennessee for medical treatment and included some purchases for clothing and presents.[2] Wife testified that the surgery was an additional corrective procedure on her bladder and abdomen necessitated by complications arising from a hysterectomy she underwent due to ovarian cancer; she testified that the entire cost was covered by insurance.[3]

The testimony of Wife's alleged physical assaults on Husband related to an event which occurred during Husband's visit home on leave from deployment. Husband testified that he and Wife had a disagreement in which Wife "got upset and kind of lunged" at him and that he put up his hands to stop her. In his testimony, Husband denied physically harming Wife. Wife, however, testified as follows regarding the incident:

> [W]e were at a bed and breakfast. And he grabbed me by the shoulders and said I am sick of this. And I fell to the ground. And he kicked me not hard enough to hurt – like hurt anything. And I got up and he walked off. And he apologized incessantly and said I'm so sorry, I'm so sorry.

Other evidence relative to this incident included an email Husband sent to Wife on July 26, 2010, in which he wrote: "I can never apologize enough for my behavior" during the vacation, and that "I don't know how you stood up from and said that you forgive me while in tears," and "I know I have hurt you emotionally before, I never thought I would stoop to such a level so low."

With respect to Wife's jealousy, Husband testified that Wife caused him to become alienated from his daughter, ex-wife, and other family members. Husband testified that he had not been able to see his nephews and nieces for years, that he had not been able to have a visit with his daughter since 2005, and that his Wife became jealous when he scheduled to have lunch with his daughter in 2007. Husband testified that Wife was often jealous. Wife did not refute Husband's testimony in this regard.

The record supports the trial court's determination that Wife did not engage in a course of conduct that caused pain and anguish to Husband or which made continued

---

[2] The testimony of both parties relative to credit card debt was somewhat limited in light of the statements of counsel prior to commencement of trial that the debt had been paid by Husband and that division of credit card debt was not an issue for the court to decide.

[3] Wife's testimony that this additional procedure was covered by insurance was not refuted.

cohabitation unacceptable.[4]   Thus, we affirm the trial court's dismissal of Husband's counterclaim for absolute divorce.

Husband next contends that the court should have declared the parties divorced because "reconciliation is not a realistic option and both spouses have suffered pain at the hand of the other spouse" and because Wife filed for legal separation only to maintain her benefits under Husband's insurance.

Tenn. Code Ann. § 36-4-102 provides that a party alleging grounds for divorce may "as an alternative to filing a complaint for divorce, file a complaint for legal separation." If the other party objects, the court may grant an order of legal separation after a hearing in which statutory grounds are established. Tenn. Code Ann. § 36-4-102(b). It is within the discretion of the trial court to decide whether to grant the remedy of divorce or the remedy of legal separation. *See Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *8 (Tenn. Ct. App. May 13, 2003).

The trial court determined that Wife proved that Husband engaged in inappropriate marital conduct, a finding which Husband does not appeal. Pursuant to Tenn Code Ann. § 36-4-102(b) the court had the discretion to grant Wife a legal separation. The cases relied upon by Husband, *Earls v. Earls*, 42 S.W.3d 887 (Tenn. Ct. App. 2000) and *Hill v. Hill*, No. M2007-00471-COA-R3-CV, 2008 WL 1822453 (Tenn. Ct. App. April 23, 2008), do not require the court, under the circumstances presented in this case, to declare the parties divorced.

In *Earls*, the trial court denied the Husband's complaint for divorce and, instead, awarded support to the Wife, who had been catastrophically injured; this Court reversed the decision and remanded the case for the trial court to enter an order declaring the parties divorced in accordance with Tenn. Code Ann. § 36-4-129(b). Significantly, we noted that the Earls conceded that their differences were irreconcilable and that "Ms. Earls resisted Mr. Earls divorce, and did not seek one of her own, not out of affection for Mr. Earls, but because she desired to avoid losing the health insurance provided by Mr. Earls' employer." *Earls*, 42 S.W.3d at 884. In *Hill*, the trial court found that Husband was guilty of inappropriate marital conduct and granted the Wife a legal separation rather than a divorce. After determining that the trial court ordered the separation solely in order for the wife to remain

---

[4] Although the trial court did not make specific findings of fact, the evidence cited by Husband does not preponderate against the determination that Wife was not guilty of inappropriate marital conduct.

covered by the husband's insurance until she qualified for medicare, this court reversed[5]; in so doing, we noted that the trial court found there was "little hope" that the parties would reconcile. *Hill*, 2008 WL 1822453, at *5. We also discussed the discretion given to trial courts in deciding whether to grant a legal separation or a divorce as well as statutory limitations on the exercise of that discretion. *Id.*

> As noted in *Henderson v. SAIA, Inc.*:

> A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case "on a clearly erroneous assessment of the evidence." *Lee Medical, Inc. V. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001). Indeed, when reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 709 (Tenn.Ct.App.1999); *see also Keisling v. Keisling,* 196 S.W.3d 703, 726 (Tenn.Ct.App.2005).

*Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010), reh'g denied (Sept. 8, 2010**)**

On the record before us, we cannot conclude that the court abused its discretion in granting a legal separation and not a divorce.

## B. Alimony *in Futuro*

Husband contends that, while Wife may need some form of periodic alimony, the trial court erred in awarding Wife $1,250 per month in alimony *in futuro* because Wife

---

[5] This court stated:

> [i]t is undisputed, and the trial court found, that there is little hope that these parties will reconcile. The trial court's decision to grant a legal separation instead of divorce was driven by the financial benefit of keeping Wife covered under Husband's health insurance policy. However, purely financial reasons are simply not sufficient to justify an award of legal separation instead of divorce.

*Hill*, 2008 WL 1822453, *6.

"overstated her condition" and because "Dr. Hughes' opinion . . . does not support ***permanent*** alimony in light of the other testimony at trial."

Trial courts have broad discretion to determine whether spousal support is needed. *See Garfinkel v.Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Alimony decisions require a careful balancing of the factors in Tenn. Code Ann.§ 36-5-121(i); the two most important factors are the need of the disadvantaged spouse and the obligor's ability to pay. *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). Once the trial court has determined that alimony is appropriate, it must determine the nature, amount, and period of the award.[6] Our legislature has stated a public policy preference for temporary, rehabilitative spousal support over long-term support. Tenn. Code Ann. § 36-5-121(d)(2).

The proper legal standard for awarding of alimony *in futuro* was set forth in *Gonsewski v. Gonsewski* as follows:

> [A]limony *in futuro* is intended to provide support on a long-term basis . . . where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." Alimony *in futuro* is appropriate when "the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

The purpose of long-term spousal support is to aid the disadvantaged spouse when economic rehabilitation is not feasible in order to mitigate the harsh economic realities of divorce. *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980). Appellate courts are disinclined to second-guess a trial court's decision regarding spousal support unless the decision is not supported by the evidence or is contrary to public policy. *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994). In *Gonsewski*, our Supreme Court stated that the role of appellate courts in reviewing an award of alimony is "to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly

---

[6] The court may award rehabilitative alimony, alimony *in futuro*, transitional alimony, alimony *in solido* or a combination of these. Tenn. Code Ann. § 36-5-121(d)(1).

unreasonable."[7] *Gonsewski*, 350 S.W.3d at 105 (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)).

In making the award of alimony, the court found that Wife sustained a traumatic brain injury in her 2009 fall. The court further determined that Wife was not capable of rehabilitation.

As evidence of her disability, Wife submitted the deposition of Dr. Richard Hughes, who treated her from 2003 to the time of trial, medical records, and her own testimony. Dr. Hughes testified that Wife suffered from a traumatic brain injury and that it was "extremely debilitating." Detailing the effects of Wife's condition, Dr. Hughes stated that she "has severe difficulty with balance," lacks fine motor coordination, is "unable to spell a word" when asked, cannot "add three plus three," and that "there has certainly been an accelerated pattern and severity in her migraines since the traumatic brain injury." Dr. Hughes opined that Wife was "absolutely not employable at this time." Husband testified that he had to assist Wife in walking only for a period of weeks after her fall and that he observed Wife writing and using the computer after her fall. Husband produced no expert evidence of Wife's condition.

The medical records and testimony of Dr. Hughes support the court's finding that Wife sustained a traumatic brain injury in her 2009 fall; Husband has not cited evidence in the record sufficient to preponderate against that finding.[8] Based upon the appropriate standard of review in alimony determinations, we cannot say that the trial court applied an incorrect legal standard or reached a clearly unreasonable conclusion in holding that Wife is incapable of rehabilitation or in the type and amount of alimony awarded. Accordingly, we affirm the trial court's award.

---

[7] "Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105–06 (Tenn. 2011).

[8] Dr. Hughes testified that he reviewed Wife's medical records prior to his deposition and that "I felt that I could form an opinion based on my own observation and physical exam of [Wife]. However, when I reviewed the . . . records closely, it merely substantiated my professional opinion."

### III. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

_____
RICHARD H. DINKINS, JUDGE